Filed 10/21/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| KATHLEEN A. KENNE, | B242262 |
| Plaintiff, Respondent, and Cross-Appellant, | (Los Angeles County Super. Ct. No. YC065354) |
| v. | |
| KEVIN P. STENNIS et al., | |
| Defendants, Appellants, and Cross-Respondents. | |

APPEAL from an order of the Superior Court of the County of Los Angeles, Dudley W. Gray II, Judge.  Affirmed, in part, reversed, in part, and remanded with directions.

Law Office of Helaine Hatter and Helaine Hatter for Defendants, Appellants, and Cross-respondents.

Law Office of Kathleen A. Kenne and Kathleen A. Kenne for Plaintiff, Respondent, and Cross-appellant.

# INTRODUCTION

Defendants, appellants, and cross-respondents Kevin Stennis (Stennis) and his wife Helaine Hatter (Hatter)[1] appeal from that portion of the trial court's order denying, in part, their Code of Civil Procedure section 425.16[2] (anti-SLAPP statute[3]) special motion to strike claims against them arising out of Hatter's police reports and her filing of two civil harassment petitions under section 527.6 against plaintiff, respondent, and cross-appellant Kathleen Kenne (plaintiff). Plaintiff cross-appeals from that portion of the trial court's order granting, in part, defendants' special motion to strike.

On the appeal, we hold that the trial court erred when it denied the special motion to strike as to the conspiracy, malicious prosecution, and intentional infliction of emotional distress causes of action. The conduct underlying those causes of action is protected activity under the anti-SLAPP statute, and plaintiff cannot prevail on the merits because her malicious prosecution claim cannot be based on the filing of a petition under section 527.6 and the conduct underlying plaintiff's other tort claims is privileged under Civil Code section 47, subdivision (b). On the cross-appeal, we hold that the trial court did not err in granting the special motion to strike as to the abuse of process, libel, and slander causes of action because those claims arise from protected activity, and plaintiff cannot prevail on them as a matter of law as they are barred by the litigation privilege in Civil Code section 47, subdivision (b). We therefore affirm that portion of the order granting the special motion to strike, reverse that portion of the order denying the special motion to strike, and remand the matter to the trial court with instructions to enter a new order granting the special motion to strike in its entirety.

---

[1]    Stennis and Hatter are sometimes referred to collectively as defendants.

[2]    All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[3]    SLAPP is an acronym for "Strategic Lawsuits Against Public Participation." (*Equilon Enterprises, LLC v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 57, fn.1.)

# FACTUAL BACKGROUND

### A. Allegations of Verified First Amended Complaint

In the "general allegations" of the first amended complaint, plaintiff asserted the following facts. After plaintiff obtained a jury verdict and judgment against Stennis's mother (mother), plaintiff began collection efforts, including seeking judgment debtor examinations of Stennis and mother based on alleged fraudulent transfers of mother's assets to Stennis. After several unsuccessful attempts by the Los Angeles County Sheriff's Department to serve personally Stennis and mother with a subpoena and order for judgment debtor examinations, the Sheriff's Department concluded that defendants were evading service.

Plaintiff and her employee conducted a "stakeout" at defendants' residence in an effort to personally serve the subpoena and order on Stennis. When Hatter arrived at her home, plaintiff's employee attempted to effect substituted service on Hatter of the subpoena and order directed at Stennis. While plaintiff remained seated in her car, her employee approached Hatter and attempted to hand her the service package in a large envelope. When Hatter refused to accept the envelope, the employee dropped it at Hatter's feet on the lawn. Hatter picked up the envelope, approached plaintiff's car, and threw the envelope through the passenger window, nearly striking plaintiff's employee in the face. Hatter then began yelling protests and profanities at plaintiff and also took photographs of plaintiff. When Hatter told plaintiff that she was calling the police, plaintiff decided to wait for the police and explain her actions. A police officer arrived and plaintiff explained to the officer that her employee had legally served civil process[4] on Hatter, and the events surrounding that service. Plaintiff and her employee then left the scene. Plaintiff was informed and believed that Stennis was present in defendants'

---

[4] Section 17, subdivision (b)(6) explains that "the word 'process' signifies a writ or summons issued in the course of judicial proceedings."

3

home during the incident and that defendants conspired to file a false police report against plaintiff with the responding officer.

Shortly after these events, Hatter "conspired with" Stennis to evade service by filing without probable cause, a civil harassment petition under section 527.6 in the Southwest District, Inglewood branch, of the Los Angeles County Superior Court seeking a temporary restraining order (TRO) and preliminary injunction against plaintiff in case number YS021314 (Inglewood action). The Inglewood action was intended to prevent lawful collection efforts by plaintiff, including service of a judgment debtor examination subpoena and order. Based on multiple fraudulent representations contained in the papers in support of the TRO and injunction requests, the trial court issued a TRO against plaintiff that remained in effect for 23 days.

The trial court held an evidentiary hearing. At the conclusion of the half-day proceeding, the trial court dissolved the TRO, denied the request for a preliminary injunction, and dismissed the civil harassment action. Plaintiff was awarded her costs.

Within a month, Hatter filed a second civil harassment petition and request for a TRO in the Central District of the Los Angeles County Superior Court in case number BS128699 (Central District action). The petition, which was never served on plaintiff, was based on the same alleged acts that were asserted in the Inglewood action.[5] The second petition was an attempt by defendants to circumvent the dismissal order in the Inglewood action and to continue to evade lawful service of process. The request for the TRO in the Central District action was denied summarily, and the action was dismissed.

In support of her first cause of action for conspiracy against defendants, plaintiff incorporated by reference all of her general allegations and alleged that defendants conspired to avoid her lawful collection efforts by filing false police reports, filing malicious petitions for civil harassment, and wrongfully obtaining a TRO against

---

[5]     Hatter's declaration described *post* at **FACTUAL BACKGROUND, Part C,** asserts that the second petition was also based on a subsequent incident between her and plaintiff.

plaintiff. According to plaintiff, the false and abusive police reports, civil harassment petitions, and requests for TRO's lacked merit and were filed without probable cause.

In support of her second cause of action for malicious prosecution against Hatter, plaintiff incorporated by reference the general allegations and the conspiracy allegations. Plaintiff further alleged that Hatter, conspiring with Stennis, filed the civil harassment petitions in the Inglewood and Central District actions maliciously and without probable cause.

In support of her third cause of action, which was for abuse of process, plaintiff incorporated by reference all of the prior allegations of the first amended complaint and alleged that Hatter and Stennis conspired to file two false and unprivileged complaints of civil harassment against plaintiff and to obtain a TRO against plaintiff without good cause. According to plaintiff, Hatter falsely represented in court that she had been advised and instructed by an Inglewood police officer to file the first civil harassment petition and TRO request. The advice from the officer was based on false information provided to him by defendants. The ulterior motive and purpose of defendants' misuse of process was to obtain an unjustified TRO and preliminary injunction against plaintiff to avoid service of process on defendants and gain an unfair advantage over plaintiff in connection with her collection efforts against mother. The civil harassment petitions and police report were hearsay, untrue, and unfounded. As a result, the petitions were dismissed on the merits.

In support of her fourth cause of action for libel per se, plaintiff incorporated each of the prior allegations of the first amended complaint and alleged that defendants filed a false written police report and thereafter submitted that report to the trial courts as the primary supporting evidence for the two civil harassment petitions. In the report, defendants falsely stated that plaintiff had engaged in improper and illegal service of civil process, thereby defaming her.

In support of her fifth cause of action for slander per se, plaintiff incorporated each of the prior allegations of the first amended complaint and alleged that defendants made a false oral police report stating that plaintiff had committed illegal acts in conjunction with

5

the lawful service of civil process on Stennis. Plaintiff alleged that the statement was defamatory per se.

In support of her sixth cause of action for intentional infliction of emotional distress, plaintiff incorporated each of the prior allegations of the first amended complaint and alleged that defendants conspired to hinder or delay plaintiff in the collection of her judgment against mother and fraudulently induced mother to transfer her real property and other assets to Stennis. According to plaintiff, among other things, defendants maliciously prosecuted two civil harassment petitions against plaintiff, abused the temporary restraining order process, and filed false oral and written police reports. Plaintiff alleged that as a direct and proximate result of defendants' acts, as alleged in support of each of the six causes of action in the first amended complaint, she suffered severe emotional distress.

### B. Plaintiff's Declaration

In her declaration in opposition to defendants' special motion to strike, plaintiff provided the following information. In September 2007, plaintiff entered into an agreement with mother to settle a civil action, case number SC092747. Almost immediately thereafter, however, Hatter prepared a grant deed that transferred mother's residence to Stennis for no consideration, conduct that allegedly breached the settlement agreement. Defendants later transferred title to a commercial property from mother to Stennis, conduct that also allegedly breached the settlement agreement.

Plaintiff sued defendants in case number SC100219 for breach of the settlement agreement between plaintiff and mother and for transfers that were allegedly fraudulent under Civil Code section 3439 et seq. Defendants filed two special motions to strike in response to plaintiff's action against them, the first of which was denied and the second of which at the time was pending on appeal.

Plaintiff, in her declaration, reiterated the facts alleged in the first amended complaint, including the service of process incident between plaintiff and Hatter, the two civil harassment petitions, and the filing of oral and written police reports by defendants.

6

Plaintiff also raised certain alleged procedural defects in defendants' special motion to strike and requested an award of costs and sanctions.

### C.     Hatter's Declaration

In support of defendants' special motion to strike, Hatter submitted a declaration that recounted in detail her version of the service of process incident with plaintiff at defendants' house.  Hatter also described a subsequent incident between her and plaintiff that occurred at the Inglewood courthouse.  According to Hatter, when she arrived at the Inglewood courthouse for an ex parte hearing, plaintiff confronted her and said, "'You stupid bitch, you don't know the law.'"  After Hatter entered the elevator, plaintiff joined her and continued to insult her and use profanity.  Plaintiff exited the elevator on the fifth floor, and Hatter continued to the sixth floor where the clerk's office was located.  While Hatter was at the counter speaking to a clerk, plaintiff again confronted her using profanity.  Plaintiff then began to scream at the clerk, and while Hatter's head was turned, plaintiff "'snatched'" Hatter's legal documents from the counter.  Hatter demanded that plaintiff return her documents, but plaintiff refused stating, "'Hit me, hit me.'"  Hatter asked the clerk if she had witnessed plaintiff taking her documents, and the clerk responded that she had seen plaintiff take the documents and that she would call a Sheriff's deputy.  Plaintiff ran from the clerk's office with the documents toward the elevators.  Hatter pursued plaintiff to the elevators demanding the return of her documents.  When the elevator doors opened, two police officers exited the elevator and detained plaintiff.  Two sheriff's deputies subsequently responded to the scene, and when they threatened to search plaintiff, she gave the deputies Hatter's documents.

Thereafter, Hatter filed a second civil harassment petition and request for a TRO against plaintiff based, at least in part, on the incident at the Inglewood courthouse, which took place after the ruling on the first civil harassment petition.  The trial court, however, denied that second request for a TRO and dismissed the petition.

7

**PROCEDURAL BACKGROUND**

Plaintiff filed her verified first amended complaint against defendants, asserting the six causes of action described above. Defendants filed a section 425.16 special motion to strike plaintiff's first amended complaint. Following briefing, the trial court held a hearing on the motion and then issued an order denying the motion as to the first cause of action against defendants for conspiracy, the second cause of action against Hatter for malicious prosecution, and the sixth cause of action against defendants for intentional infliction of emotional distress. The trial court, however, granted the motion as to the third, fourth, and fifth causes of action against defendants for abuse of process, libel, and slander, respectively.

Defendants filed a notice of appeal from that portion of the trial court's order denying, in part, the special motion to strike. Plaintiff filed a cross-appeal from that portion of the order granting, in part, the special motion to strike.

**DISCUSSION**

**A.      Legal Principles**

*1.      Anti-SLAPP Statute and Standard of Review*

Section 425.16 provides that a cause of action arising from a defendant's conduct in furtherance of constitutionally protected rights of free speech or petitioning may be stricken unless the plaintiff has a probability of prevailing on the merits. (§ 425.16, subd. (b)(1).) In ruling on a special motion to strike under section 425.16, the trial court employs a two-prong analysis. Initially, the trial court determines "'whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. . . . If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim.' [Citation.]" (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 733.)

8

To satisfy the second prong—the probability of prevailing—the plaintiff must demonstrate that the complaint is legally sufficient and supported by a prima facie showing of facts to support a favorable judgment if the evidence submitted by the plaintiff is accepted. The trial court considers the pleadings and evidentiary submissions of both the plaintiff and the defendant. Although "'the court does not *weigh* the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim. [Citation.]' (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821 [123 Cal.Rptr.2d 19, 50 P.3d 733], superseded by statute on other grounds as noted in *Hutton v. Hafif* (2007) 150 Cal.App.4th 527, 547 [59 Cal.Rptr.3d 109].)" (*Cole v. Patricia A. Meyer & Associates, APC* (2012) 206 Cal.App.4th 1095, 1104-1105 (*Cole*).) The standard for determining the merits of a defendant's special motion to strike a complaint is similar to that for determining the merits of a defendant's motion for summary judgment. "Both seek to determine whether a prima facie case has been presented by [the] plaintiff in opposing the motions." (*Bergman v. Drum* (2005) 129 Cal.App.4th 11, 18; see Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2014) ¶ 7:1008, p. 7(II)-57 ["The 'probability of prevailing' is tested by the same standard governing a motion for summary judgment, nonsuit, or directed verdict"].) If a plaintiff sets forth a prima facie case in opposition to such motions, the motions must be denied.

"We review an order granting an anti-SLAPP motion de novo, applying the same two-step procedure as the trial court. (*Alpha & Omega Development, LP v. Whillock Contracting, Inc.* (2011) 200 Cal.App.4th 656, 663 [132 Cal.Rptr.3d 781].) We look at the pleadings and declarations, accepting as true the evidence that favors the plaintiff and evaluating the defendant's evidence '"only to determine if it has defeated that submitted by the plaintiff as a matter of law." [Citation.]' (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3 [46 Cal.Rptr.3d 638, 139 P.3d 30] (*Soukup*).) The plaintiff's cause of action needs to have only '"minimal merit" [citation]' to survive an anti-SLAPP motion. (*Id.* at p. 291.)" (*Cole, supra*, 206 Cal.App.4th at p. 1105.)

9

### 2. *Civil Code Section 47, Subdivision (b)—Litigation Privilege*

Because under the second prong of the anti-SLAPP analysis we are required to determine the legal sufficiency of plaintiff's claims, the appeal and cross-appeal raise the issue of whether one or more of plaintiff's causes of action against defendants are barred on the merits as a matter of law under the litigation privilege set forth in Civil Code section 47, subdivision (b).  That section provides, in pertinent part:  "A privileged publication or broadcast is one made:  [¶] . . . [¶]  (b)  In any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable pursuant to Chapter 2 (commencing with Section 1084) of Title 1 of Part 3 of the Code of Civil Procedure, . . . ."  "The privilege in [Civil Code] section 47[, subdivision (b)] is 'relevant to the second step in the anti-SLAPP analysis[6] in that it may present a substantive defense plaintiff must overcome to demonstrate a probability of prevailing. (See, e.g., *Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 926-927 [120 Cal.Rptr.2d 576] [where the plaintiff's defamation action was barred by Civil Code section 47, subdivision (b), the plaintiff cannot demonstrate a probability of prevailing under the anti-SLAPP statute]; *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman* (1996) 47 Cal.App.4th 777, 783-785 [54 Cal.Rptr.2d 830] [the defendant's prelitigation communication privileged and trial court therefore did not err in granting motion to strike under the anti-SLAPP statute].)' (*Flatley* [*v. Mauro*], *supra*, 39 Cal.4th at p. 323.)" (*Rohde v. Wolf*, *supra*, 154 Cal.App.4th at p. 38.)

The Supreme Court has stated, "The litigation privilege, codified at Civil Code section 47, subdivision (b), provides that a 'publication or broadcast' made as part of a 'judicial proceeding' is privileged.  This privilege is absolute in nature, applying 'to *all* publications, irrespective of their maliciousness.' (*Silberg v. Anderson* (1990) 50 Cal.3d

---

**6**    As explained below, "'[n]otwithstanding [the] relationship between the litigation privilege and the anti-SLAPP statute . . . the two statutes are not substantively the same.'" (*Rohde v. Wolf* (2007) 154 Cal.App.4th 28, 38, fn. 2, quoting *Flatley v. Mauro* (2006) 39 Cal.4th 299, 323; see *Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1263.)

10

205, 216 [266 Cal.Rptr. 638, 786 P.2d 365] (*Silberg*).) 'The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action.' (*Id*. at p. 212.) The privilege 'is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards.' (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1057 [39 Cal.Rptr.3d 516, 128 P.3d 713] (*Rusheen*).)" (*Action Apartment Association, Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1241.)

The Supreme Court has also observed that "'[t]he principal purpose of [Civil Code] section 47 [, subdivision (b)] is to afford litigants and witnesses [citation] the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions.' (*Silberg*[, *supra*,] 50 Cal.3d [at p.] 213 [266 Cal.Rptr. 638, 786 P.2d 365].) Additionally, the privilege promotes effective judicial proceedings by encouraging '"open channels of communication and the presentation of evidence"' without the external threat of liability (*ibid*.), and 'by encouraging attorneys to zealously protect their client's interests.' (*Id.* at p. 214.) 'Finally, in immunizing participants from liability for torts arising from communications made during judicial proceedings, the law places upon litigants the burden of exposing during trial the bias of witnesses and the falsity of evidence, thereby enhancing the finality of judgments and avoiding an unending roundelay of litigation, an evil far worse than an occasional unfair result.' (*Ibid*.)" (*Flatley v. Mauro, supra,* 39 Cal.4th at pp. 321-322.)

"[T]he privilege is 'an "absolute" privilege, and it *bars all tort causes of action except a claim of malicious prosecution*.' (*Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 360 [7 Cal.Rptr.3d 803, 81 P.3d 244], italics added.) The litigation privilege has been applied in 'numerous' cases involving 'fraudulent communications or perjured testimony.' [Citations.]" (*Flatley v. Mauro, supra,* 39 Cal.4th at p. 322, italics added.) Because Civil Code section 47, subdivision (b) protects any statements or writings that have "some relation" to a lawsuit, communications made both during and in

11

anticipation of litigation are covered by the statute. (*Rubin v. Green* (1993) 4 Cal.4th 1187, 1193-1194; see *Neville v. Chudacoff, supra,* 160 Cal.App.4th at p. 1268.)

**B.    Analysis of Appeal**

*1.    Protected Activity*

We have said, "Section 425.16 defines an 'act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue,' . . . as including statements or writings made before a judicial proceeding or made in connection with an issue under consideration or review by a judicial body. (§ 425.16, subd. (b)(1); see *id*., subd. (e).) Thus, statements, writings and pleadings in connection with civil litigation are covered by the anti-SLAPP statute, and that statute does not require any showing that the litigated matter concerns a matter of public interest. (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115 [81 Cal.Rptr.2d 471, 969 P.2d 564] (*Briggs*); *Healy v. Tuscany Hills Landscape & Recreation Corp.* (2006) 137 Cal.App.4th 1, 5 [39 Cal.Rptr.3d 547] (*Healy*).)" (*Rohde v. Wolf, supra*, 154 Cal.App.4th at p. 35.) We have also observed that although section 425.16 and Civil Code section 47, subdivision (b) are not coextensive and are substantively different, "the two statutes serve similar policy interests, and courts 'look[] to the litigation privilege [Civ. Code, § 47] as an aid in construing the scope of section 425.16, subdivision [(e)(2)] with respect to the first step of the two-step anti-SLAPP inquiry . . . .' (*Flatley* [*v. Mauro*]*, supra*, 39 Cal.4th at p. 323; see *Briggs, supra*, 19 Cal.4th at p. 1115; *Taheri Law Group v. Evans* (2008) 160 Cal.App.4th 482, 489 [72 Cal.Rptr.3d 847]; *Rohde* [*v. Wolf*]*, supra*, 154 Cal.App.4th at pp. 35-36; see also *Healy*[*, supra*,] 137 Cal.App.4th [at p.] 5 [39 Cal.Rptr.3d 547] . . . [Both section 425.16 and Civil Code section 47 are construed broadly, to protect the right of litigants to "'the utmost freedom of access to the courts without [the] fear of being harassed subsequently by derivative tort actions.'" [Citations.]'].)" (*Neville v. Chudacoff*, *supra,* 160 Cal.App.4th at pp. 1262-1263.)

12

As plaintiff concedes, each of her six claims against defendants, including the conspiracy, malicious prosecution, and intentional infliction of emotional distress claims that are the subject of the appeal, is based on the same alleged conduct by defendants— the making of allegedly false police reports about the service of process incident between plaintiff and Hatter and the filing of two civil harassment petitions, one of which resulted in the issuance of a TRO against plaintiff that remained in effect for 23 days. All of that conduct, however, was in furtherance of defendants' constitutional right of petition, a protected activity under section 425.16.

There is no question that the filing of a civil harassment petition constitutes protected activity. (See *Thomas v. Quintero* (2005) 126 Cal.App.4th 635, 647.) Defendants' allegedly false police reports were made as a result of the service of process incident, which involved petitioning activity, i.e., an attempt by plaintiff to serve process on defendants in connection with collection efforts in her suit against mother and to obtain discovery in her suit against defendants alleging fraudulent transfers. As discussed *post*, the making of allegedly false police reports also can be protected petitioning activity under the first prong of the anti-SLAPP statute if the falsity of the report is controverted. Similarly, the civil harassment petitions were based on the service of process incident and thus arose directly from plaintiff's suit against mother, as well as her direct action against defendants, and constitute petitions to the government for redress of alleged grievances. Therefore, defendants satisfied the first prong of the anti-SLAPP analysis as to each cause of action asserted against them by demonstrating that each of those tort claims arose from protected activity.

Plaintiff contends that to the extent her tort claims, other than malicious prosecution, were based on defendants' conduct in making allegedly false police reports, that conduct does not constitute constitutionally protected speech or petitioning. She bases this contention on the holding in *Lefebvre v. Lefebvre* (2011) 199 Cal.App.4th 696 (*Lefebvre*). In that case, a wife falsely reported to police that her husband had threatened to kill her and her children. (*Id.* at p. 700.) In response, the husband filed an action against the wife and her coconspirator for, inter alia, malicious prosecution, false arrest,

13

and intentional infliction of emotional distress.  (*Id.* at p. 701.)  In affirming the trial court's order denying the wife's special motion to strike, the court in *Lefebvre* held that because the wife's report to the police was *admittedly false* and therefore illegal, it did not constitute conduct in furtherance of her constitutional rights of petition or free speech.  (*Id.* at pp. 703-705; see *Flatley v. Mauro, supra,* 39 Cal.4th at pp. 311-333 [illegal activity not protected by anti-SLAPP statute].)

Plaintiff's reliance on *Lefebvre, supra,* 199 Cal.App.4th 696 is misplaced.  In that case, the wife conceded that her report to the police was both false and illegal.  Here, defendants deny that any report they made to the police was false or illegal.  Thus, this case is controlled by the case law holding that when allegations of making false reports are controverted, they are insufficient to render that alleged conduct unlawful as a matter of law and outside the protection of section 425.16.  (See *Dwight R. v. Christy B.* (2013) 212 Cal.App.4th 697, 712 ["mere allegation that [the defendant] engaged in unlawful . . . activities is insufficient to render [the defendant's] alleged actions unlawful as a matter of law and outside the protection of . . . section 425.16"]; *Chabak v. Monroy* (2007) 154 Cal.App.4th 1502, 1512 [the defendant's allegedly false report to police that the plaintiff inappropriately touched her was deemed protected activity because there was no uncontroverted evidence showing the report to be false]; *Siam v. Kizilbash* (2005) 130 Cal.App.4th 1563, 1569-1570 (*Siam*) [defendant's allegedly false report to school official was protected activity, notwithstanding plaintiff's allegation of falsity, because no uncontroverted evidence showed that it was false].)  In addition, as noted, the police reports dealt with efforts at service of papers in an existing litigation and thus were "made in connection with an issue under consideration or review by a . . . judicial body." (§ 425.16, subd. (e)(2).)

Moreover, even if defendants' conduct in making allegedly false police reports did not constitute protected activity, none of plaintiff's claims is based solely on that conduct. Instead, each claim also includes interrelated allegations concerning the filing and prosecution of allegedly unmeritorious civil harassment petitions and requests for restraining orders.  Under established authority, when a cause of action is based on both

protected and unprotected activity, it is subject to the anti-SLAPP statute, unless the protected activity is merely incidental to the unprotected conduct. (*Wallace v. McCubbin* (2011) 196 Cal.App.4th 1169, 1187; but see Burke, Anti-Slapp Statute (The Rutter Group 2013) § 3.146, pp. 3-73 to 3-75 [conflicting cases on mixed causes of action]; see also Weil & Brown et al., Cal. Practice Guide:  Civil Procedure Before Trial, *supra,* ¶ 7:937, at pp. 7(ll)-52 to 7(ll)-53.)  As one court stated, "In general, whether a cause of action is subject to a motion to strike under the [anti-] SLAPP statute turns on whether the gravamen of the cause of action targets protected activity.  [Citation.]  If liability is not based on protected activity, the cause of action does not target the protected activity and is therefore not subject to the [anti-] SLAPP statute.  [Citations.]  [¶]  Where . . . a cause of action is based on both protected activity and unprotected activity, it is subject to section 425.16 '"unless the protected conduct is 'merely incidental' to the unprotected conduct."'  [Citations.]" (*Haight Ashbury Free Clinics, Inc. v. Happening Now Ventures* (2010) 184 Cal.App.4th 1539, 1550.)

According to plaintiff, the making of allegedly false police reports was only part of a broader conspiracy between defendants to hinder and delay her collection efforts, which conspiracy also included the transfer of mother's property to Stennis and the filing of the civil harassment petitions based, in part, on the police reports.  Because defendants' conduct in filing and prosecuting the civil harassment petitions is conduct in furtherance of their constitutional right to petition the courts, each of plaintiff's claims arose from protected activity that was not incidental to the additional allegations of making allegedly false police reports.

### 2.     *Probability of Prevailing on Conpiracy Claim*

The trial court denied defendants' special motion to strike the first cause of action for conspiracy because, although defendants had satisfied the first prong of the anti-SLAPP analysis by demonstrating that the conspiracy claim arose from protected activity, plaintiff had shown that she had a probability of success on the merits of that claim and defendants had failed to rebut that showing.  Based on the allegations in plaintiff's

15

complaint and her declaration in opposition to the special motion to strike, plaintiff cannot prevail on the merits of her conspiracy claim, and, therefore, the trial court erred in denying the special motion to strike that claim.

Conspiracy is not a cause of action. It is a theory of liability under which persons who, although they do not actually commit a tort themselves, share with the tortfeasor or tortfeasors a common plan or design in its perpetration. One who participates in a civil conspiracy, in effect, becomes liable for the torts of the coconspirators. But the conspiracy does not result in tort liability unless an actual tort is committed. (*Applied Equipment Corp. v. Litton Saudi Arabia Ltd* (1994) 7 Cal.4th 503, 510-511.) As the Supreme Court explained, "'A civil conspiracy, however atrocious, does not per se give rise to a cause of action unless a civil wrong has been committed resulting in damage.'" [Citations.] 'A bare agreement among two or more persons to harm a third person cannot injure the latter unless and until acts are actually performed pursuant to the agreement. Therefore, it is the acts done and not the conspiracy to do them which should be regarded as the essence of the civil action.' [Citation.]" (*Id.* at p. 511.)

As we conclude below, plaintiff cannot prevail on any of the underlying tort claims upon which the conspiracy claim is based. Because a bare conspiracy, without the commission of some underlying tort by a coconspirator is not actionable, plaintiff could only prevail on her conspiracy claim if she showed that she had a probability of prevailing on one or more of the torts upon which that conspiracy claim is predicated. Her failure to show a probability of success on any of the underlying tort claims therefore bars her conspiracy claim as a matter of law.

### 3. *Probability of Prevailing on Malicious Prosecution Claim*

In denying the special motion to strike the malicious prosecution claim, the trial court ruled that Hatter had shown that it arose from protected activity, but that plaintiff had met her burden of showing that she had a probability of success on the merits of that claim and defendants had failed to rebut that showing. Defendants contend that plaintiff cannot prevail on her malicious prosecution claim because, as a matter of law, a

malicious prosecution claim cannot be based on the filing of a civil harassment petition under section 527.6.  In support of this contention, defendants refer to the Court of Appeal decision in *Siam, supra,* 130 Cal.App.4th 1563.

In *Siam, supra,* 130 Cal.App.4th at page 1574, the court held that "the unsuccessful filing of a petition for an injunction under section 527.6 may not form the basis for a malicious prosecution action."  The court explained the reasoning underlying its holding as follows.  "Section 527.6 is used where the victim has been stalked, threatened or otherwise seriously harassed.  (*Grant v. Clampitt* (1997) 56 Cal.App.4th 586, 591 [65 Cal.Rptr.2d 727].)  There are many cases that exemplify the bitter and even irrational disputes that arise under section 527.6.  (See *Kobey v. Morton* (1991) 228 Cal.App.3d 1055 [278 Cal.Rptr. 530] [defendant hired private detective to follow victim, threatened victim's children, falsely accused victim of having AIDS]; *Ensworth v. Mullvain* (1990) 224 Cal.App.3d 1105 [274 Cal.Rptr. 447] [defendant stalked victim, made numerous phone calls, sent threatening letters, threatened to commit suicide in victim's presence]; *Elster v. Friedman* (1989) 211 Cal.App.3d 1439 [260 Cal.Rptr. 148] [neighbors played stereo at high volume, made false reports to animal regulation officers about victims, repeatedly rang their doorbell]; *Oriola v. Thaler* (2000) 84 Cal.App.4th 397 [100 Cal.Rptr.2d 822] [defendant made 25 to 40 'crank calls' to victim every day].)  In such highly charged circumstances a successful defendant may be inclined to counter with a civil action against the unsuccessful plaintiff.  Yet, as in family law disputes, the background of bitterness would make it difficult to distinguish between a malicious petition and one that is not malicious."  (*Id.* at pp. 1572-1573.)

The court in *Siam, supra,* 130 Cal.App.4th at page 1573 added, "Further, just as in family law matters, section 527.6 provides for attorney fees as sanctions for a frivolous petition.  (§ 527.6, subd. (i).)  [¶]  . . .  [¶]  Another important consideration is that a section 527.6 petition is not an ordinary civil action.  [Citation.]  The statute provides for an action to be completed in a matter of weeks and incorporates an expectation that victims may often seek relief without the benefit of a lawyer.  (See § 527.6, subds. (d) [trial court makes an 'independent inquiry' into the facts] & (m) [Judicial Council forms

17

to be 'simple and concise'].)  Permitting a malicious prosecution claim to follow an unsuccessful section 527.6 petition would frustrate this streamlined procedure.  The prudent plaintiff would seek legal advice before filing a petition.  The risk of subsequent litigation might dissuade victims of serious harassment from seeking the remedy.  Those that were not discouraged would be subject to the possibility of serious financial harm in the future.  On balance, these concerns outweigh the concern that an aggrieved defendant might be deprived of the additional remedies a malicious prosecution action would provide in egregious situations."  As noted in *Siam*, the Supreme Court has stated that the benefits to be derived from expediting the case and providing for sanctions for "frivolous or delaying conduct" can outweigh the burdens of "one or more additional rounds of malicious prosecution litigation." (*Siam, supra,* 130 Cal.App.4th at p. 1571; see *Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 873.)

We agree with the holding in *Siam, supra,* 130 Cal.App.4th 1563, as well as the reasoning and policies upon which that holding is based, and conclude that plaintiff cannot prevail on her malicious prosecution claim against Hatter because that claim is based on the filing and prosecution of the two civil harassment petitions under section 527.6, which petitions, for public policy reasons, cannot form the basis for a malicious prosecution action.  The trial court therefore erred when it denied the special motion to strike the malicious prosecution claim against Hatter.

Our conclusion in this regard is supported by the recent decision in *S.A. v. Maiden* (2014) 229 Cal.App.4th 27.  In that case, a wife requested and obtained a temporary restraining order against her husband under the Domestic Violence Prevention Act, Family Code section 6200 et seq.  (*Id.* at p. 33.)  When the wife subsequently voluntarily withdrew her request for a restraining order, the husband sued her for malicious prosecution, as well as for other torts.  (*Id* at p. 34.)  Relying on, inter alia, *Siam, supra,* 130 Cal.App.4th 1563, the court held that a request for and the issuance of a restraining order under the Domestic Violence Protection Act, like one requested and issued under section 527.6, cannot as a matter of law be the basis of a claim for malicious prosecution. (*Id.* at pp. 36-38.)

18

*4. Probability of Prevailing on Intentional Infliction of*
*Emotional Distress Claim*

The trial court ruled that although plaintiff's intentional infliction of emotional distress claim arose from protected activity, plaintiff had shown that she had a probability of prevailing on that claim. In doing so, the trial court implicitly concluded that the conduct upon which that claim was based was not privileged under Civil Code section 47, subdivision (b). Because plaintiff's intentional infliction of emotional distress claim—as her abuse of process, libel, and slander tort claims—is barred by the litigation privilege, the trial court erred in denying the special motion to strike as to that claim.

Plaintiff's intentional infliction claim is based upon defendants' alleged conduct in filing false police reports about plaintiff's attempt to serve civil process and in filing and prosecuting two civil harassment petitions, including their successful request for a TRO in the Inglewood action. All of that conduct, however, involved communications that were made during the course of and directly related to judicial proceedings. For example, the allegedly false police reports, irrespective of their alleged maliciousness, constituted defendants' petitioning activity during the course of plaintiff's lawsuit against them for, in part, fraudulent transfers and were directly related to plaintiff's attempt to serve civil process on defendants during the course of plaintiff's lawsuit against mother that had resulted in a judgment against mother. Similarly, all the communications concerning the two civil harassment petitions, including the allegedly false declarations, irrespective of their alleged maliciousness, were connected directly to the prosecution of those two petitions. Therefore, because the conduct upon which the intentional infliction of emotional distress claim was based had some logical relationship to the various lawsuits between the parties, that conduct is privileged under Civil Code section 47, subdivision (b). As a result, plaintiff cannot as a matter of law prevail on that claim. (See *S.A. v. Maiden, supra,* 229 Cal.App.4th at p. 43 ["the litigation privilege under Civil Code section 47, subdivision (b), bars [intentional infliction of emotional distress] claims arising out of litigation conduct"].)

Plaintiff contends that even assuming she cannot prevail on her malicious prosecution claim because it is based on the filing of a petition under section 527.6, all of her other tort claims, including her intentional infliction of emotional distress claim, are legally sufficient because Civil Code section 47, subdivision (b) does not apply to those claims. She bases this contention, in part, on the decision in *Siam, supra,* 130 Cal.App.4th 1563, a case in which the court reversed an order denying a motion to strike a malicious prosecution claim, but affirmed the order to the extent it denied the motion as to the abuse of process and negligent infliction of emotional distress claims.

In *Siam, supra,* 130 Cal.App.4th 1563, the plaintiff, in addition to asserting a malicious prosecution claim based on the filing of a section 527.6 petition, asserted causes of action for abuse of process and negligent infliction of emotional distress based on the filing of alleged false reports of child abuse with the police and other agencies. (*Id.* at p. 1568.) The court in that case held that the civil liability imposed on voluntary reporters under Penal Code section 11172, subdivision (a)[7] for knowingly filing false reports of child abuse overrode the litigation privilege under Civil Code section 47, subdivision (b). (*Id.* at p. 1578.) Therefore, according to the court in *Siam,* because the conduct upon which the plaintiff's abuse of process and negligent infliction claims were based was made specifically actionable by Penal Code section 11172, subdivision (a), the Civil Code section 47, subdivision (b) litigation privilege did not bar those claims. (*Ibid.*)

Here, defendants' conduct in filing allegedly false police reports and unfounded civil harassment petitions was not subject to Penal Code section 11172, subdivision (a)

---

**7** Penal Code section 11172, subdivision (a) provides, in pertinent part, "(a) No mandated reporter shall be civilly or criminally liable for any report required or authorized by this article, and this immunity shall apply even if the mandated reporter acquired the knowledge or reasonable suspicion of child abuse or neglect outside of his or her professional capacity or outside the scope of his or her employment. Any other person reporting a known or suspected instance of child abuse or neglect shall not incur civil or criminal liability as a result of any report authorized by this article unless it can be proven that a false report was made and the person knew that the report was false or was made with reckless disregard of the truth or falsity of the report, and *any person who makes a report of child abuse or neglect known to be false or with reckless disregard of the truth or falsity of the report is liable for any damages caused.*" (Italics added.)

and therefore was not expressly made actionable under that section. Thus, the holding in *Siam, supra,* 130 Cal.App.4th 1563 based specifically on that Penal Code section is inapplicable to our Civil Code section 47, subdivision (b) analysis and our conclusion that the litigation privilege bars all of plaintiff's tort claims, except her claim for malicious prosecution, which, under *Siam, supra,* 130 Cal.App.4th 156, is independently barred. Therefore, the trial court erred in not striking the intentional infliction of emotional distress claim.

## C. Analysis of Cross-Appeal—Probability of Prevailing on Defamation and Abuse of Process Claims

The trial court granted the special motion to strike the abuse of process, libel, and slander claims, finding that those claims arose from protected activity and plaintiff had failed to show a probability of prevailing on the merits of those claims. Plaintiff cross-appeals from that portion of the trial court's order granting the special motion to strike as to those three claims. According to plaintiff, the trial court's ruling as to those causes of action was inconsistent with the court's ruling denying the motion as to the conspiracy, malicious prosecution, and intentional infliction causes of action because all six of plaintiff's causes of action were based on the same alleged conduct by defendants.

Although we agree with plaintiff that each of her causes of action was based on the same alleged conduct by defendants, as explained above in our analysis of the appeal, that conduct constituted protected activity under section 425.16 and was privileged under Civil Code section 47, subdivision (b), irrespective of its alleged maliciousness. Therefore, for the same reasons set forth in our discussion of the intentional infliction of emotional distress claim, plaintiff cannot, as a matter of law, demonstrate that she has a probability of succeeding on her abuse of process, libel, and slander claims, each of which is predicated on privileged communications related to one or more of the pending lawsuits between the parties. Accordingly, the trial court did not err in granting the special motion to strike those three causes of action. (See, e.g., *S.A. v. Maiden, supra,* 229 Cal.App.4th at p. 43, fn. 6 ["the litigation privilege under Civil Code section 47,

21

subdivision (b), would also likely apply to bar [the plaintiff's] abuse of process claim"]; *JSJ Limited Partnership v. Mehrban* (2012) 205 Cal.App.4th 1512, 1522 ["[the plaintiff's] claim for abuse of process is barred by the litigation privilege [under Civil Code section 47, subdivision (b)"]; *Healy, supra,* 137 Cal.App.4th at pp. 5-6 [action for defamation in connection with litigation falls within anti-SLAPP statute]; *Kashian v. Harriman, supra,* 98 Cal.App.4th at pp. 926-927 [defamation action barred by Civil Code section 47, subdivision (b) should be stricken under the anti-SLAPP statute]; see also *Siam, supra,* 130 Cal.App.4th at p. 1579 [abuse of process is the improper use of process after it is issued—not the mere filing of an action or proceeding].)

As discussed above in connection with the appeal from the denial of the intentional infliction of emotional distress claim, plaintiff contends that the decision in *Siam, supra,* 130 Cal.App.4th 1563 supports her contention that the Civil Code section 47, subdivision (b) litigation privilege does not apply to her abuse of process, libel, and slander claims. For the reasons explained above in our discussion of the intentional infliction of emotional distress claim, we conclude that the holding in *Siam* based on Penal Code section 11172, subdivision (a) does not alter our conclusion that the litigation privilege bars, as a matter of law, all of plaintiff's nonmalicious prosecution tort claims.

## DISPOSITION

The portion of the trial court's order denying defendants' special motion to strike is reversed, the portion granting that motion is affirmed, and the matter is remanded to the trial court to enter a new order granting the special motion to strike in its entirety. Defendants are awarded costs on appeal. Their entitlement, if any, under section 425.16 to reasonable attorney fees and costs incurred on the special motion to strike in the trial court and on appeal shall be determined by the trial court on remand.[8]

**CERTIFIED FOR PUBLICATION**

                                                    MOSK, J.

We concur:

TURNER, P. J.

MINK, J.[*]

---

[8]    See *Trope v. Katz* (1995) 11 Cal.4th 274.

[*]    Retired Judge of the Superior Court of the County of Los Angeles, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.