Filed 8/19/20  South of No North v. Herman  CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| SOUTH OF NO NORTH<br><br>　　　Plaintiff and Respondent,<br><br>　　v.<br><br>DAVID HERMAN et al.,<br><br>　　　Defendants and Appellants. | B298915 consolidated with B301961<br><br>(Los Angeles County<br>Super. Ct. No.BC718566) |

APPEAL from orders of the Superior Court of Los Angeles County, Malcolm H. Mackey, Judge.  Reversed.

Abel Law Offices and Joshua H. Abel for Defendants and Appellants.

Law Office of Martin L. Horwitz and Martin Horwitz for Plaintiff and Respondent.

# INTRODUCTION

Appellant David Herman filed a cross-complaint against respondents South of No North, LLC (SONN) and Daniel Starr, alleging defamation and related claims. Herman alleged that respondents caused a defamatory online article to be published about him, and that respondents told Herman's employer and acquaintances that law enforcement agencies were investigating Herman for embezzling from respondents. Respondents filed a special motion to strike under the anti-SLAPP statute, Code of Civil Procedure section 425.16.[1] They asserted that because the online article stated that Starr had filed a police report regarding the allegations against Herman, Herman's claims "arose from" a police report, which is protected activity under section 425.16. Respondents also contended that Herman's claims did not have a probability of success, because filing a police report is privileged under Civil Code section 47. The trial court agreed and granted the motion.

We reverse. Herman did not allege that respondents filed a police report, nor did he allege any damages arising from the filing of a police report. To the contrary, Herman stated that he suspected no police report was ever filed, and that the online article and respondents' statements to his employer and acquaintances were false. Because the filing of a police report constituted the sole basis for the special motion to strike,

---

[1]All further statutory references are to the Code of Civil Procedure unless otherwise indicated. An anti-SLAPP motion seeks to strike a "[s]trategic lawsuit against public participation." (*Wilson v. Cable News Network, Inc*. (2019) 7 Cal.5th 871, 882 fn. 2 (*Wilson*).)

2

respondents failed to demonstrate that Herman's claims "arose from" protected activity and the motion should have been denied.

The trial court also granted respondents' motion for attorney fees as prevailing parties under section 425.16, subdivision (c). Herman separately appealed that ruling, and we consolidated the two appeals. Because we reverse the court's order granting the special motion to strike, there is no longer a basis for the fee award. We therefore also reverse the attorney fees order.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Herman's cross-complaint

SONN filed a complaint against Herman and others on August 21, 2018; the complaint is not in the record on appeal. Herman filed a cross-complaint against SONN and Starr on March 25, 2019. The cross-complaint included 15 causes of action, but only the first four causes of action are relevant to the anti-SLAPP motion at issue on appeal: defamation, false light invasion of privacy, intentional infliction of emotional distress, and negligent infliction of emotional distress. We therefore focus on the facts related to those causes of action.

Herman alleged that SONN "was created to purchase, construct, renovate/remodel, and sell real estate," and Starr was the managing member of SONN. Respondents "embarked on construction and remodeling of a residential home" in Beverly Hills, California; the cross-complaint refers to this as "the project" or "the property." In March 2017, Starr approached Herman about assisting with the project. In April 2017, respondents "hired Herman to assist with financial, administrative, and personnel tasks related to the Property, including but not limited to reviewing contractor bids, reviewing

3

bills, assisting with finance/budget tasks, overseeing the licensed general contractors that [respondents] hired to perform the construction on the jobsite, liaising between Starr and [respondents'] architect and designer, and managing one of [respondents'] employees," a jobsite supervisor.

Herman lived in Nevada, but traveled to California to work on the project. He also worked as a coach for the junior varsity football team at Bishop Gorman High School, a Catholic high school near Las Vegas. The school was under the authority of the Las Vegas Catholic Archdiocese, which had "control over certain personnel, hiring and firing." Herman alleged that he had "a very good reputation in both his personal and professional life, and is well respected in both his local business community and his local community."

Herman alleged that "[a]s the Project approached its close, the relationship between Herman and Starr became strained for reasons not clear to Herman." "[W]ithout any factual basis, [respondents] began to falsely accuse Herman of a criminal act: embezzling funds from [SONN] and Starr." Respondents "reached out to people in Herman's community and defamed him."

Herman alleged that "on or about August 26, 2018, in 'theblast.com[,]' [respondents] caused to be published on the Internet the following defamatory statement" about Herman. The online article, titled "'Million Dollar Listing' Doll-Filled House Subject of Embezzlement Investigation" (the Blast article), stated:

> "One of the properties featured on Bravo's 'Million Dollar Listing' is now at the center of an embezzlement probe and it involves one of the top-ranked football programs in the nation.

4

"Real estate mogul Daniel Starr filed a report with LAPD[2] last month, which was obtained by The Blast. Starr claims his cousin, David Herman, was a project manager for the rebuild of the house and allegedly created a false bank account to pump up contractors' invoices and siphon the extra money for himself.

"Herman is also the junior varsity head coach for the Bishop Gorman football team. The school, located in Nevada, has a top-ranked program and has delivered multiple national championships over the years.

"Starr originally purchased the Beverly Hills home from Mary Sheldon, daughter of 'I Dream of Jeanie' [*sic*] creator Sidney Sheldon. He appeared on 'Million Dollar Listing' and realtor Josh Flagg gave him hope that the property—which featured a slew of creepy dolls when it was featured on the show—could be turned into a something very special.

"Starr did give the property a new life, and the 8,000 sq ft mansion now has six bedrooms, eight bathrooms and will be listed for $18 million at the end of the year. It's also in a star-studded neighborhood near celebs like Mariah Carey and Paul McCartney.

"It's unclear just how much money Starr alleges Herman swindled during the rebuild of the mansion.

"The Blast reached out to David Herman and Bishop Gorman High School for comment and so far no comment." Herman alleged that the "publication infers that Herman had committed a crime," and "mentions Herman by name

---

[2]Presumably, the Los Angeles Police Department.

throughout."  He alleged that the statements were false and defamatory, were not privileged, and respondents "caused these statements to be made knowing the falsity thereof or without using reasonable care to determine the truth or falsity thereof."  Respondents "made the defamatory statements with malice and with the intent to injure Herman's good name and reputation and to interfere with his employment."  Herman further alleged that the "publication was seen and read by persons in Herman's community," and it harmed Herman's reputation.  "At least one person in Herman's community . . . has told Herman directly that he will no longer do business with him as a result of this article."

Herman further alleged that respondents "made defamatory statements about Herman to various persons at the Las Vegas Catholic Archdiocese, and persons at Bishop Gorman High School," including the school's athletic director.  Respondents "told these persons, among other things, that Herman was being criminally charged and investigated by the FBI, that Herman was an embezzler, and that Herman did a poor job in connection with his work on the Property."  He also alleged that respondents "provided the persons at the Las Vegas Archdioceses [*sic*] with a copy of the [Blast] article."

Herman alleged causes of action for defamation, false light invasion of privacy, intentional infliction of emotional distress, and negligent infliction of emotional distress.  He alleged that respondents "caused excessive and unsolicited internal and external publications of defamation," which "included express and implied accusations that Herman was not a competent employee, violated laws, and that he violated rules and/or business regulations."  The defamatory statements included "that Herman committed a crime, was an embezzler, was not a

6

competent employee, and/or violated State and/or Federal law." These statements also cast Herman in a false light. Publication was made to "third persons, who had no need or desire to know," including respondents' employees, "Herman's community in Nevada, and . . . prospective future employers and business partners of Herman." Herman alleged that he was damaged by the statements in his reputation and standing in the community. He also asserted that respondents' actions caused emotional distress. He requested actual damages, punitive damages, attorney fees, and costs.

## B. Respondents' anti-SLAPP motion

Respondents filed a special motion to strike the entire cross-complaint under section 425.16, or in the alternative, to strike the first four causes of action. Under section 425.16, "[a] cause of action arising from a person's act in furtherance of the 'right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability' that the claim will prevail." (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788 (*Monster Energy*), citing § 425.16, subd. (b)(1).) Thus, "[a]nti-SLAPP motions are evaluated through a two-step process. Initially, the moving defendant bears the burden of establishing that the challenged allegations or claims 'aris[e] from' protected activity in which the defendant has engaged." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061 (*Park*).) "If the defendant carries its burden, the plaintiff must then demonstrate its claims have at least 'minimal merit.'" (*Ibid.*)

7

In their motion, respondents stated that Starr is SONN's manager and Herman's cousin. They argued that Herman's first four causes of action relied on the allegation that "Starr filed a police report making allegedly defamatory comments, and the act of filing the police report with allegedly defamatory comments defamed him, cast him in a false light, and caused him emotional distress." Respondents pointed to the sentence in the Blast article stating, "Real estate mogul Daniel Starr filed a report with LAPD last month, which was obtained by The Blast." They asserted, "The cornerstone for these 4 causes of action is the claim that Starr filed a police report. The causes of action are then built around the filing of that police report, and what happened after a third party news source obtained the police report and found it newsworthy." And although the cross-complaint had alleged that respondents "caused [the Blast article] to be published on the Internet," respondents in their motion asserted, in all-bold font, "Significantly, there is no allegation that either of the cross-defendants had any role in publishing the article."

Respondents argued that they therefore met the first prong of the anti-SLAPP analysis: "The case law is crystal clear: the filing of a police report is a protected activity." They also contended that it is "unquestionable that such police reports come within the protection of the anti-SLAPP statute." The contended that Herman's causes of action therefore arose from protected activity.

Respondents asserted that Herman could not meet the second prong of the anti-SLAPP analysis to show a probability of prevailing, because respondents' actions fell under the litigation privilege in Civil Code section 47. They also argued, "[T]he cross-

8

complaint does not allege that the cross-defendants published the article. Instead, it alleges a third party news source obtained the police report and published a summary of its findings.  The only allegation is that Starr filed a police report."  Respondents further asserted that the article only said that Starr "alleged" things about Herman, and such generalized statements of opinion are not actionable.

## C.    **Opposition and reply**

Herman opposed respondents' motion, stating, "The allegations in the Cross-Complaint do not hinge on or arise from a police report."  Instead, although the article referenced a police report, "[t]he alleged police report is incidental to the claims." Herman pointed out that other than quoting the article, the cross-complaint said nothing about a police report, and instead stated that respondents had made untrue and defamatory publications to the people Herman worked with and people in Herman's community.  He argued that his claims "are a result of [respondents'] slanderous conduct and defamatory publications made to third persons, regardless of the police report."

Herman also contended that other than the Blast article's mention of a police report, there was no suggestion that any such report was ever filed.  Herman stated in a declaration that he had never seen a copy of a police report, he had "never been contacted by the LAPD, the FBI, or by any governmental law enforcement agency regarding Starr, any of the matters in the Complaint filed by SONN, or any of the matters in the Cross-Complaint."  Herman stated that he had contacted the LAPD to determine if a police report had been filed, he was waiting for a response from the LAPD, and he "intends to subpoena 'theblast.com' for a copy of the alleged police report."

9

Herman stated in his declaration, "Based on my knowledge of Starr and his business practices, I am informed and believe that Starr paid someone at 'theblast.com' to run [the] article thereby causing it to be published." Herman stated that he intended to determine through discovery whether Starr or SONN had paid theblast.com to publish the article. Herman also believed that Starr made defamatory statements to people at the Las Vegas Catholic Archdiocese and at Bishop Gorman High School, including the school's athletic director, who had received the Blast article and contacted Herman about it. Herman also stated that Starr told Herman's stepfather that the FBI was investigating Herman.

Herman argued that because the cross-complaint was not based on a police report, and it was unclear whether a police report had even been filed, his allegations did not arise from protected activity and respondents had not met their initial burden. Herman also asserted that even if respondents had shifted the burden, his claims were likely to prevail on the merits. He further argued that the litigation privilege did not apply, and requested attorney fees under section 425.16, subdivision (c).

In their reply, respondents asserted again that Herman's allegations arose from a police report because "[b]ut for the police report, the filing of which is protected activity, theblast.com . . . would not have allegations to report. Everything alleged against the moving parties was attributed in the news article as having been obtained from the police report." Respondents argued that filing a police report was a protected activity, and the litigation privilege applied to police reports.

10

Respondents also disputed Herman's contention that the police report was incidental to his claims, stating, "The only 'statements' attributed to [respondents] in theblast.com news publication came from information theblast.com gleaned from a police report. The police report is not incidental to the claims. It is essential to the claims." Respondents asserted that the only statements or conduct "attributed to [them] arise out of the filing of the police report."

## D. Court's ruling on the special motion to strike

Following a short hearing, the trial court granted respondents' motion and struck the first four causes of action in the cross-complaint without leave to amend. The court's written ruling implied that respondents met their burden under the first prong of the anti-SLAPP analysis, stating that Herman's first four causes of action "are based upon a quoted Internet publication that expressly was solely based upon [respondents'] alleged police report, which moving parties are not shown conclusively to have made falsely. In other words, but for a reported police report, caused by [respondents], that alleged publication would not have existed, because the publication is about no other conduct." The court continued, "Further, that police report allegedly was communicated to a substantial number of people, including Bishop Gorman High School athletic director, and the Las Vegas Archdioceses [*sic*], regarding the public interest of knowing about an allegedly embezzling employee, beyond the one publication on the Internet. . . . Thus, the full breadth of the 1st through 4th claims are intertwined with the police report, as to the various, alleged publications."

The court held that Herman failed to meet the second prong of the anti-SLAPP analysis because "the opposing

11

declaration fails to be sufficiently competent to prove the elements of the claims, including by failing to prove that [respondents] caused the police report, or the Internet and other publications of defamatory statements about embezzling, and by failing to prove it caused harm." The court also noted that police reports are protected activity, and the "anti-SLAPP statute is inapposite where the making of a false police report is uncontested or conclusive, because that is not an act in furtherance of the constitutional rights of petitioning or free speech."

Herman appealed the court's order.

## E. Attorney fees

Respondents then filed a motion seeking attorney fees and costs. (See § 425.16, subd. (c)(1) ["a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs."].) Herman opposed the motion, asserting that the court's ruling on the anti-SLAPP motion was being appealed, and respondents' requested fees were excessive.

The court awarded respondents the amount of fees and costs requested: $25,066.37. Herman also appealed that order. We granted Herman's motion to consolidate the two appeals.

## DISCUSSION

As stated above, anti-SLAPP motions under section 425.16 are evaluated through a two-step process. The moving defendant bears the burden of establishing that the challenged claims arise from protected activity, and if the defendant meets that burden, the plaintiff must establish that there is a probability that his claims will prevail. (See *Park, supra,* 2 Cal.5th at p. 1061; *Monster Energy, supra*, 7 Cal.5th at p. 788.) Protected activity includes "(1) any written or oral statement or writing made

12

before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law," and "(2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." (§ 425.16, subd. (e).)

"We review de novo the grant or denial of an anti-SLAPP motion. [Citation.] We exercise independent judgment in determining whether, based on our own review of the record, the challenged claims arise from protected activity. [Citations.] In addition to the pleadings, we may consider affidavits concerning the facts upon which liability is based. [Citations.] We do not, however, weigh the evidence, but accept plaintiff's submissions as true and consider only whether any contrary evidence from the defendant establishes its entitlement to prevail as a matter of law." (*Park, supra*, 2 Cal.5th at p. 1067.)

## A.     Herman's claims do not arise from a police report

"The defendant's first-step burden is to identify the activity each challenged claim rests on and demonstrate that that activity is protected by the anti-SLAPP statute." (*Wilson, supra*, 7 Cal.5th at p. 884.) Here, the trial court found that Herman's challenged claims arose from respondents' filing of a police report, and was therefore protected activity under section 425.16. This finding was erroneous. Herman did not allege that respondents filed a police report, nor did he allege that any of his damages resulted from respondents' filing of a police report.

To determine whether a cause of action arises from a defendant's protected activity, we look at the "pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2).) "A

13

claim arises from protected activity when that activity underlies or forms the basis for the claim." (*Park, supra,* 2 Cal.5th at p. 1062.) "[T]he focus is on determining what 'the defendant's activity [is] that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning.' [Citation.] 'The only means specified in section 425.16 by which a moving defendant can satisfy the ["arising from"] requirement is to demonstrate that *the defendant's conduct by which plaintiff claims to have been injured* falls within one of the four categories described in subdivision (e) . . . .' [Citation.] In short, in ruling on an anti-SLAPP motion, courts should consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability." (*Id.* at p. 1063 [emphasis in original].)

Respondents do not discuss the meaning of the "arising from" prong of the anti-SLAPP test, or cite any authorities addressing that issue. Rather, their sole contention in the special motion to strike, repeated verbatim in their respondent's brief, is that filing a police report constitutes protected activity under section 425.16: "Filing a police report is unquestionably a protected activity. As such, [respondents] have made the threshold showing that action arises from acts in furtherance of their rights of petition and free speech." Respondents have not asserted, below or on appeal, any other basis for finding that the cross-complaint is barred under section 425.16.[3]

---

[3]For example, respondents have not contended that the alleged defamatory statements were made in connection with an issue of public interest. (§ 425.16, subd. (e)(3), (4).)

14

The allegations regarding respondents' actions in Herman's cross-complaint do not arise from the filing of a police report. Nothing in the cross-complaint suggests Herman was damaged as a result of a police report. Indeed, Herman questions whether any such report was actually filed, stating that he had never been contacted by the LAPD or any other law enforcement agency about issues regarding the property, and he was attempting to discover from the LAPD whether such a report was filed. Although the Blast article stated that a report had been filed with the LAPD, Herman also alleged that respondents told Herman's stepfather and people at the Las Vegas Catholic Archdiocese and Bishop Gorman High School that Herman was being investigated by the FBI, a wholly different agency.

Moreover, the cross-complaint does not suggest that Herman's employer, business associates, or acquaintances ever received a copy of a police report. Rather, Herman alleged that respondents "caused" the Blast article to be published, and he clarified in his declaration that he believed respondents paid theblast.com to publish the article. Herman also alleged that respondents gave the Blast article to people at the Las Vegas Archdiocese. None of these allegations arise from respondents' filing of a police report.

Respondents cite several cases holding that filing police reports constitutes protected activity under section 425.16, subdivision (e). In *Kenne v. Stennis* (2014) 230 Cal.App.4th 953, for example, the plaintiff alleged that the defendants were evading service of process for a lawsuit to enforce a judgment. As part of their attempts to evade process, the defendants allegedly filed false police reports and two civil harassment petitions. The plaintiff conceded that "each of her six claims against defendants,

15

including the conspiracy, malicious prosecution, and intentional infliction of emotional distress claims that are the subject of the appeal, is based on the same alleged conduct by defendants—the making of allegedly false police reports about the service of process incident . . . and the filing of two civil harassment petitions." (*Id*. at p. 966.) The court held, "All of that conduct, however, was in furtherance of defendants' constitutional right of petition, a protected activity under section 425.16." (*Ibid*.)

Respondents also cite *Comstock v. Aber* (2012) 212 Cal.App.4th 931, in which the cross-complainant, Comstock, alleged that the cross-defendant, Aber, falsely reported that Comstock had sexually assaulted her. Comstock alleged two causes of action, defamation and intentional infliction of emotional distress, and alleged that Aber had made her false statements to several people, including police. Addressing Aber's statements to police, the Court of Appeal noted, "The law is that communications to the police are within SLAPP" under section 425.16, subdivision (e)(1) and (e)(2). (*Id*. at p. 941.)

Respondents also cite *Siam v. Kizilbash* (2005) 130 Cal.App.4th 1563, in which the plaintiff alleged that the defendant falsely accused him of abusing the defendant's young sons; defendant reported the abuse to school officials and police. After investigations deemed the accusations unfounded, the plaintiff sued defendant alleging eight causes of action, including libel and slander. (*Id*. at p. 1568.) The Court of Appeal held that the "defendant's reports of child abuse to persons who are bound by law to investigate the report or to transmit the report to the authorities are protected by the statute. (§ 425.16, subd. (e)(2).)" (*Id*. at p. 1570.)

16

These cases are inapposite.  Here, Herman did not allege that respondents filed a police report or initiated any sort of official proceeding.  To the contrary, Herman alleged that respondents *falsely* told theblast.com, his acquaintances, and his business associates that the police were investigating him.  "Under the first step of the anti-SLAPP analysis, . . . it is the defendant's acts that matter.  [Citations.]  If the acts alleged in support of the plaintiff's claim are of the sort protected by the anti-SLAPP statute, then anti-SLAPP protections apply." (*Wilson, supra,* 7 Cal.5th at p. 887.)  Because filing a police report does not constitute "the defendant's conduct by which plaintiff claims to have been injured" (*Equilon Enterprises v. Consumer Cause, Inc*. (2002) 29 Cal.4th 53), Herman's claims did not "arise from" protected activity.

Respondents asserted no other argument regarding the first prong of the anti-SLAPP analysis.  They therefore did not meet their initial burden under section 425.16, and their special motion to strike should have been denied on that basis.

Because respondents did not meet their burden under the first prong of the anti-SLAPP analysis, we do not address the parties' contentions regarding the second prong, whether Herman's claims have a probability of success.

B.    **Attorney fees**

As noted above, the trial court awarded respondents attorney fees and costs in the amount of $25,066.37 as prevailing parties under the anti-SLAPP statute.  (See § 425.16, subd. (c)(1).)  Herman appealed that order, and asserts that if the court's ruling on respondents' anti-SLAPP motion is reversed, the fee award must also be reversed.  We agree.

17

In light of our holding that respondents' special motion to strike should have been denied, respondents are no longer the prevailing parties under section 425.16.  Thus, there is no longer a basis for an award of attorney fees and costs under section 425.16, subdivision (c)(1), and we therefore reverse the trial court's order awarding fees and costs to respondents.

## DISPOSITION

The trial court's orders (1) granting respondents' special motion to strike under section 425.16, and (2) awarding respondents fees and costs under section 425.16 are reversed. Herman is entitled to recover his costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, J.

We concur:


MANELLA, P. J.


WILLHITE, J.

18