Filed 2/4/16  Hughes v. California Dept. of Corrections CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| CHARLES HUGHES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION AND MATTHEW CATE,<br><br>    Defendants and Appellants. | B253725<br><br>(Los Angeles County<br>Super. Ct. No. BC454639) |

        APPEAL from orders of the Superior Court of the County of Los Angeles, Barbara A. Meiers, Judge.  Reversed.

        Kamala D. Harris, Attorney General, Alicia M.B. Fowler, Senior Assistant Attorney General, Kenneth C. Jones, Supervising Deputy Attorney General, Nancy G. James and Robert D. Petersen, Deputy Attorneys General for Defendants and Appellants.

        Law Offices of Stephen J. Horvath, Stephen J. Horvath, Marcus J. Berger; Benedon & Serlin, Douglas G. Benedon and Gerald M. Serlin for Plaintiff and Respondent.

**INTRODUCTION**

Defendants and appellants the Department of Corrections and Rehabilitation and Matthew L. Cate (the Department) filed a special motion to strike under the anti-SLAPP statute[1]—Code of Civil Procedure 425.16[2]—seeking to strike, inter alia, the FEHA[3] retaliation claim filed by plaintiff and respondent Charles Hughes (plaintiff). The trial court granted the motion to strike the FEHA retaliation claim and plaintiff did not appeal from that directly appealable order.

Two years after the trial court struck the FEHA retaliation claim, plaintiff moved a different trial court for leave to file an amendment to his operative complaint to add a FEHA retaliation claim based on newly discovered facts that had occurred after the filing of the original complaint, as well as certain of the allegations that supported his original FEHA claim. The trial court granted the motion and the Department again moved to strike the new FEHA retaliation claim under the anti-SLAPP statute. The trial court denied the second anti-SLAPP motion, and the Department timely appealed from that order, arguing, inter alia, that the trial court was not authorized to grant leave to amend a claim that had previously been stricken under the anti-SLAPP statute.

We hold that the trial court lacked the authority to allow an amendment that circumvented the final, binding ruling striking the FEHA retaliation claim. We further hold that, assuming the trial court had discretionary authority to allow an amendment limited to newly discovered facts, the trial court nevertheless erred by denying the anti-SLAPP motion to the FEHA retaliation claim based on those newly discovered facts. We

---

[1]    SLAPP is an acronym for "Strategic Lawsuit Against Public Participation" (*Equilon Enterprises, LLC v. Consumer Common Cause, Inc.* (2002) 29 Cal.4th 53, 57, fn. 1.)

[2]    All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[3]    The California Fair Employment and Housing Act, Government Code section 12900 et seq.

2

therefore reverse the orders granting leave to file an amendment to the operative complaint and denying the second anti-SLAPP motion.

## FACTUAL BACKGROUND

### A.    First Action[4]

In December 2005, plaintiff—a correctional lieutenant employed by the Department and assigned to the California State Prison-Los Angeles County (the prison)—was terminated by the Department.  In 2006, plaintiff filed a FEHA action against the Department claiming he was terminated in retaliation for engaging in protected activities (first action).  Plaintiff also appealed the Department's decision to terminate him to the State Personnel Board (Board).  In April 2009, the Board reinstated plaintiff to his former position.  Thereafter, a jury in the first action returned a verdict in favor of plaintiff in the amount of $1,670,393.37.  The Department appealed from the judgment on the verdict, and in January 2014, this court affirmed the judgment.

### B.    Plaintiff's Alleged Conduct While Separated from State Service

During the 45-month period from December 2005 to September 2009 that plaintiff was separated from state service, he remained the local union chapter president of the California Correctional Police Officers Association.  While acting in his capacity as union president, plaintiff's interactions with Department personnel resulted in allegations

---

[4]    The factual and procedural discussion about the first action between plaintiff and the Department is taken from our first unpublished opinion filed in that case, number B238134.  The Department requested that we take judicial notice of our first opinion in the first action, as well as our subsequent opinion in that action affirming the trial court's order denying plaintiff prejudgment interest on lost earnings, which requests we granted.  The Department also requested that we take judicial notice of a judgment of the Superior Court of the County of Sacramento denying plaintiff's petition for writ of mandate, and we grant that request as well.

3

of misconduct against him, including allegations that he threatened former coworkers and entered prison grounds unescorted in violation of prison policy.

### C. Investigation of Alleged Misconduct and Investigative Closure Letter

In 2009, the Department conducted an investigation into plaintiff's conduct during the period he was separated from state service. An investigator from the office of internal affairs interviewed 17 witnesses and prepared a 64-page report with 52 exhibits attached. In August 2010, the Department sent plaintiff an investigative closure letter (closure letter) informing plaintiff that the Department had concluded its investigation and determined that nine of the ten allegations against plaintiff were either "not sustained" or had resulted in "no finding" being made. The Department, however, sustained the allegation that plaintiff had filed a false claim with the Bureau of State Audits against a deputy warden. Notwithstanding that finding, the Department did not dismiss or suspend plaintiff, reduce his pay, or issue a letter of reprimand to him.

### D. Administrative Time Off

The Board reinstated plaintiff to his former position in April 2009, but the Department did not restore plaintiff to the payroll until September 2009.[5] At that time, the investigation of plaintiff's alleged misconduct during the time he was separated from state service was ongoing. As a result, the Department placed plaintiff on administrative time off on September 16, 2009. The letter informing plaintiff of that decision advised him that he would be on paid leave under the supervision of Associate Director Mike

---

[5] Plaintiff refers to the five-month period between the issuance of the Board's reinstatement order and his reinstatement by the Department as a "constructive suspension."

4

Knowles[6] and that he was required during regular business hours to call a supervisor before he left home, a requirement that plaintiff refers to as "home confinement."

## PROCEDURAL BACKGROUND

### A.    Complaint

Plaintiff filed the instant action in February 2011, alleging 11 causes of action. The first cause of action alleged retaliation under FEHA; the second cause of action alleged failure to prevent discrimination, harassment, and retaliation under FEHA; the third cause of action alleged retaliation under Labor Code section 1102.5, subdivision (b); and the fourth through eleventh causes of action alleged violations of the Public Safety Officers' Procedural Bill of Rights Act (POBRA) (Gov. Code, § 3300 et seq.).

The FEHA and Labor Code retaliation claims were based on the following alleged adverse employment actions: (i) the imposition by the Department of a five-month constructive suspension by delaying compliance with the Board's April 2009 reinstatement order; (ii) the institution by the Department of a new investigation based on plaintiff's alleged misconduct during the period he was separated from state service; (iii) the imposition by the Department of administrative time off that was the equivalent of home confinement; (iv) the Department's failure to pay plaintiff back-pay, benefits, and interest in violation of Government Code section 19584; and (v) the issuance by the Department of the closure letter which included a sustained finding of dishonesty against plaintiff and denied him his due process rights, including his right to a *Skelly* hearing[7] or a right to appeal to the Board.

---

[6]    Because Associate Director Knowles was assigned to Department headquarters in Sacramento, plaintiff refers to his supervision by Knowles as a "constructive transfer" from his former position at the prison.

[7]    "*Skelly* hearing" refers to the administrative hearing required by *Skelly v. State Personnel Board* (1975) 15 Cal.3d 194 [state statutory scheme regulating civil service employment recognizes that a permanent civil service employee has a property interest in continued employment that is protected by due process].

## B.	First Anti-SLAPP Motion

In response to the complaint, the Department filed an anti-SLAPP motion under section 425.16. The trial court, Judge Charles Palmer presiding, granted the motion as to the first cause of action for retaliation under FEHA and the third cause of action for retaliation under Labor Code section 1102.5, subdivision (b). In partially granting the motion, the trial court concluded as follows: "As to the first and third causes of action, an element of each of them is that the plaintiff suffered an 'adverse employment action.' Paragraph 31 of the complaint sets forth the alleged adverse employment actions of the defendants which form the basis for these causes of action. Among the five actions alleged in Paragraph 31 are 'instituting a new and frivolous misconduct investigation including subjecting plaintiff to an eight-hour administrative interrogation' and 'unlawfully and maliciously notifying plaintiff that the misconduct investigation resulted in a sustained finding of dishonesty against him without any "*Skelly*" rights.' These allegations describe protected activity of the defendants. The investigation of misconduct by its employees and communicating the findings of that investigation are free speech rights of the [Department] and involve public issues. [¶] . . . [¶] Regarding the first and third causes of action which the court has found do arise out of protected activity, the court turns to the second step of the SLAPP determination—whether plaintiff has made a prima facie showing of a probability of prevailing. [¶] Plaintiff submits three declarations in support of his claims. The court has sustained all but one of [the Department's] evidentiary objections to those declarations and their respective exhibits. Moreover, even if the objections had not been sustained, plaintiff would fail to show a probability of prevailing at trial. [¶] . . . [¶] Insofar as no further evidence has been submitted by plaintiff and the facts stated in the declarations submitted by defendant do not constitute a factual showing of a prima facie case, the motion is granted as to the first [and] third . . . causes of action." Plaintiff filed a motion to reconsider the trial court's ruling granting the anti-SLAPP motion that the trial court denied in November 2011. As discussed below, plaintiff did not appeal from the order granting the anti-SLAPP motion.

6

## C. Third Amended Complaint

Following three demurrers by the Department, plaintiff filed a third amended complaint. Prior to the due date for a responsive pleading, the action was reassigned from Judge Palmer to Judge Barbara Meiers. Thereafter, the Department filed a demurrer to the third amended complaint. On May 29, 2013, Judge Meiers held a case management conference. At the time, the trial court had not yet received plaintiff's opposition to the demurrer. Nevertheless, the trial court indicated that it was inclined to read the opposition papers that plaintiff was prepared to file that day, advance the hearing date, and overrule the demurrer. The trial court then voiced its apparent disagreement with Judge Palmer's ruling on the first anti-SLAPP motion. "Frankly, I'm not sure I would have agreed, or come to the same conclusion as the court that sustained the [anti-SLAPP] motion in the case. I'm not sure I wouldn't, but I'm not at all sure I would. Nevertheless, that's water under the bridge because it was not appealed . . . ." After a pause in the proceedings, during which the trial court read plaintiff's opposition to the demurrer, the trial court, with the agreement of the parties, advanced the hearing on the demurrer and denied it.

The trial court proceeded to conduct the case management conference, during which the court commented that it was unfortunate that the action had not been consolidated with the first action. The trial court then made the following comments: "You might keep in mind, [plaintiff's] counsel, unless it's been eliminated over the years—I've been on the bench for so long, who knows—there used to be a provision in the law that—I hope it's not gone—that's called an amendment to the complaint, and that is designed to add to a complaint things that have happened after the filing of the complaint, and before the trial. So if there are, if there's, for example, a retaliation case, and things have gone on, and remember cases used to wait five year for trial, and over those five years [additional] things happened, or sexual harassment [occurred], or any number of things [occurred], you don't have to amend the complaint. You do an amendment to the complaint, that might have gotten you where you needed to go, but again it's water under the bridge."

7

In apparent response to the trial court's comments about filing an amendment to the complaint *in the first action*, plaintiff filed a motion to amend the third amended complaint *in this action* to reallege a cause of action for retaliation under FEHA. The Department opposed the motion, arguing, inter alia, that plaintiff was precluded from amending his FEHA retaliation claim once an anti-SLAPP motion had been granted striking that claim, citing *Simmons v. Allstate Ins. Co.* (2001) 92 Cal.App.4th 1068 (*Simmons*). Following argument, the trial court granted plaintiff leave to reallege a FEHA retaliation claim.

### D.    Amendment to Third Amended Complaint

Pursuant to the leave granted by the trial court, plaintiff filed an amendment to the third amended complaint that asserted three new alleged adverse employment actions, each of which had occurred after the filing of the original complaint. The first adverse action—dissemination of plaintiff's confidential personnel records—was based on the following allegations: "Based on evidence discovered at deposition by plaintiff on June 26, 2013, plaintiff is informed and believes and thereon alleges that at some time between August 12, 2010 and May 31, 2011, defendants, without providing any notice to plaintiff, unlawfully disseminated plaintiff's personnel records including the 'Investigative Closure Letter' dated August 12, 2010, which contains the sustained finding of dishonesty described in paragraph 31 of the Third Amended Complaint, to numerous [Department] employees including but not limited to Associate Director Mike Knowles, Undersecretary Scott Kernan, Warden Brian Haws, and Associate Warden Tom Arlitz, along with a transmittal email that referred to giving testimony about the included matters in a pending proceeding. Such dissemination of plaintiff's confidential personnel records violated *California Penal Code*, section 832.7(a) and the [Department]'s own policy, Department Operational Manual section 33010.314. [¶] Plaintiff is further informed and believes and thereon alleges that along with the sustaining finding of dishonesty, defendants also published to the same group of officials, all or part of plaintiff's internal affairs investigation file for the 2009 investigation, which was initiated after plaintiff had

8

prevailed in overturning two separate terminations that were imposed and found to be retaliatory acts in the . . . trial [of the first action]. Indeed, Associate Warden Tom Arlitz testified that he received a 'big, huge, thick' package of plaintiff's confidential personnel records including the Investigative Closure Letter that contained the sustained finding of dishonesty and he believed that plaintiff's confidential records were still somewhere in his 'home.' Arlitz readily admitted that he was fully aware that plaintiff had a dishonesty charge sustained against him by Warden Pat Vasquez. [¶] The investigation file that is believed to have been published to these 10 to 12 officials contained approximately 40 frivolous allegation of misconduct that were the subject of the investigation at one time or another. The sustained finding of dishonesty, and the whole investigation file, and all of plaintiff's personnel records and information are protected by confidentiality rights established by *California Penal Code*, section 832.7(a) and case law interpreting this section. None of the recipients of the publication of the sustained finding of dishonesty, or the investigation file, had any proper, official, legitimate, or lawful reason to receive these confidential documents and this confidential information."

The second adverse action—continuing refusal to pay accrued interest on back pay for December 2005 through June 2006—was based on the following allegations: "As a consequence of the [Board] reinstatement order effective April 15, 2009, plaintiff was entitled to interest at the legal rate on his back pay award. [¶] . . . [¶] After the [Board] issued its reinstatement order effective April 15, 2009, because of the provision of Government Code, section 19584 that the deduction from back pay for interim earnings does not apply to the first sixth [*sic*] months of back pay, i.e. from December 2005 to June 2006, the Department paid the first six months of back pay on April 14, 2010, albeit without interest. Accordingly, plaintiff demanded payment of interest on his back pay for that six-month interval. [¶] In response to plaintiff's demand for payment of interest on his back pay from December 2005 through June 2006, plaintiff was informed by Ms. Georgia Jones of the Institutional Personnel Office that plaintiff was indeed owed the interest demanded, but that Deputy Attorney General Reynolds had instructed her not to pay the interest. On or around April 30, 2012, when the payment had not been made,

9

plaintiff filed an internal 'EEO complaint' concerning the non-payment of the increment of interest for the interval from December 2005 through June 2006, which was assigned . . . a [Department] Grievance number [], and was tracked through Institutional Log numbers []. [¶] In a letter dated August 13, 2012, signed by Brigid Hanson, Chief of the [Department's] Office of Labor Relations, plaintiff's grievance for the accrued interest on his back pay from December 2005 through June 2006 was denied. The denial was contrary to *Government Code*, section 19584. [¶] In explaining the reasons for denying the payment of interest on plaintiff's back pay, the August 13, 2012 grievance denial letter stated: 'The grievances further allege that you were informed by the Institutional Personnel Officer, Ms. Georgia Jones, that you were owed the interest, although she advised you Deputy Attorney General Reynolds instructed her not to pay the interest. . . .' . . . After quoting *Government Code*, section 19584, the grievance denial letter concluded, 'However, since [the prison] was advised by Staff Counsel to suspend payment of interest pending the outcome of a motion you filed in Los Angeles County Superior Court (Case #[]), a pending case regarding prejudgment interest on your back pay, which could affect your interest payment, [the Office of Labor Relations] stands in concurrence with the lower level response.'"

The third adverse action—solicitation of adverse information for use in further retaliation—was based on the following allegations: "In April 2012, plaintiff requested of [Department] Secretary Matthew Cate that he take action to prevent [the Department's] employees and state attorneys . . . [from] retaliating against him for his FEHA-protected activities. The retaliation nevertheless continued, and in May 2012, plaintiff discovered additional acts of retaliation directed against him. [¶] On May 24, 2012, [Department] Correctional Officer L. Ayon reported to [Department] Correctional Lieutenant Bruce Frank that a [Department] official was requesting Officer Ayon's assistance for the purpose that 'We are going to get Hughes.' Officer Ayon understood that the official directing the request to him was seeking information that would result in adverse action against plaintiff, because Officer Ayon had previously provided [information to] the same official about various other staff. Officer Ayon could only

10

identify the requesting official as 'Timmy' from 'Folsom.' Plaintiff is informed and believes, and thereon alleges, that the identified official is [California State Prison-Sacramento County] Warden Tim Virga, and that Warden Virga was seeking to have Officer Ayon keep track of plaintiff, and develop and pass on any information that Officer Ayon could provide to support a new adverse action against plaintiff."

In addition to alleging the three new adverse employment actions, plaintiff reiterated in paragraph A30 of the amendment certain of the adverse employment actions upon which his original retaliation claim under FEHA had been based.[8] "In addition to the retaliatory actions described [above], defendants retaliated against plaintiff by the following actions, which are alleged in the Third Amended Complaint: (a) from April 15, 2009 through September 15, 2009, imposing a constructive suspension by intentionally failing to comply with the [Board's] order of reinstatement for the first five months after it was issued; (b) on August 28, 2009, imposing terms of administrative Time Off ['ATO'] that were equivalent to home confinement, despite a total lack of departmental authority or precedent for taking such an action; (c) failing to pay plaintiff the back-pay and benefits awarded by the [Board], including restoration of plaintiff's retirement service contributions and interest, in violation of *Government Code*, section 19584; (d) on or around August 12, 2010, placing a sustained finding of filing a false internal complaint in plaintiff's personnel records without granting plaintiff his rights under *Government Code*, section 3304(b), 3305 and 3306 in connection therewith."

After specifying the adverse employment actions upon which his FEHA retaliation claim was based, plaintiff alleged that all of those actions were in retaliation for his engagement in protected activities and were therefore actionable under FEHA. In effect, plaintiff reasserted the FEHA retaliation claim that Judge Palmer had stricken, along with three new alleged adverse employment actions.

---

[8]     In paragraph A30 of the amendment, plaintiff included all of the prior adverse employment actions, except the Department's investigation of his conduct while separated from state service.

### E. Second Anti-SLAPP Motion

In response to the amendment to the third amended complaint, the Department filed a second anti-SLAPP motion seeking to strike the renewed FEHA retaliation claim. The Department argued that (i) the adverse employment actions that formed the basis of plaintiff's original FEHA retaliation claim had already been adjudicated adversely to plaintiff and therefore that claim could not be amended to circumvent that ruling; (ii) the adverse employment actions involved the Department's protected speech or right of petition; and (iii) plaintiff could not prevail on the merits of his renewed FEHA retaliation claim. Following oral argument, the trial court denied the Department's second anti-SLAPP motion. The Department filed a timely appeal from the order denying its second anti-SLAPP motion.

## DISCUSSION

### A. Orders Granting First Anti-SLAPP Motion and Leave to Amend

After this matter had been fully briefed, we requested that the parties submit letter briefs on the issue of the effect of plaintiff's failure to appeal from Judge Palmer's order granting, in part, the Department's first anti-SLAPP motion and striking plaintiff's cause of action for retaliation under FEHA.[9] Specifically, we questioned whether, in light of Judge Palmer's order, our analysis of Judge Meier's order denying the second anti-SLAPP motion should be confined to the allegations and evidence relating to the newly pled adverse employment actions in the amendment to the third amended complaint.

In response to our request, plaintiff submitted a letter brief contending that the doctrine of issue preclusion[10] does not confine our analysis to the allegations and

---

[9] As discussed, following the partial granting of the first anti-SLAPP motion, there were still claims pending in the trial court.

[10] Plaintiff's discussion of the doctrine of issue preclusion is inapplicable to this case because, in general issue preclusion applies (1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted in a

evidence relating to newly pled adverse employment actions in the amendment. According to plaintiff, the Department forfeited any argument based on the preclusive effect of Judge Palmer's order striking the FEHA retaliation claim by failing to raise the issue in the trial court or on appeal. In addition, plaintiff contends that the ruling on the first anti-SLAPP motion does not have preclusive effect because the issues before the trial court on the second anti-SLAPP motion were not identical to those actually litigated and necessarily decided by the ruling granting, in part, the first anti-SLAPP motion.

In its letter brief, the Department contends that because an order granting an anti-SLAPP motion prevents a plaintiff from thereafter amending a complaint to circumvent that order, the trial court erred in allowing plaintiff to amend his complaint to state a FEHA retaliation claim two years after a different judge had stricken plaintiff's original FEHA retaliation claim. Relying on *Simmons, supra,* 92 Cal.App.4th 1068, the Department argues that section 425.16 makes no provision for amending a complaint after a finding of protected activity and no such right should be implied.

In ruling on the Department's first anti-SLAPP motion, the trial court expressly found that two of the five alleged adverse employment actions upon which plaintiff based his FEHA retaliation claim arose from protected activity. The trial court therefore concluded that as to the FEHA retaliation claim, the Department had met its burden on the first prong of the anti-SLAPP statute by showing that the gravamen of plaintiff's FEHA retaliation claim was predicated on protected activity. The trial court then analyzed the evidence in support of the FEHA retaliation claim and concluded that plaintiff had failed to satisfy his burden—under the second prong of the anti-SLAPP statute—of showing a probability of prevailing on his FEHA retaliation claim. Based on

---

second suit against one who was a party in the first suit or one in privity with that party. (See *DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824-825; *Alpha Mechanical, Heating & Air Conditioning, Inc. v. Travelers Casualty & Surety Co. of America* (2005) 133 Cal.App.4th 1319, 1326-1327.) Here, the final order in issue—Judge Palmer's order striking the FEHA retaliation claim—was made in the same case. Therefore, the issue is the effect of that order on our analysis of Judge Meiers's orders granting leave to amend to reinstate the FEHA claim and denying the second anti-SLAPP motion.

those conclusions, the trial court granted the anti-SLAPP motion on the FEHA retaliation claim and struck that claim, including all the allegations in support of it, from the complaint.

The trial court's ruling granting the first anti-SLAPP motion on the FEHA retaliation claim was a directly appealable order. (§ 425.16, subdivision (i) ["An order granting or denying a special motion to strike shall be appealable under section 904.1; § 904.1, subdivision (a)(13) [authorizing appeal "[f]rom an order granting or denying a special motion to strike under section 425.16"]; *Varian Medical Systems, Inc. v. Defino* (2005) 35 Cal.4th 180, 192; *Old Republic Construction Program Group v. The Boccardo Law Firm, Inc.* (2014) 230 Cal.App.4th 859, 866, fn. 4.) Plaintiff, however, did not appeal from the trial court's order within the time period provided for such an appeal. That order therefore became final and binding upon him and us. (*In re Marriage of Weiss* (1996) 42 Cal.App.4th 106, 119 ["Because [petitioner] did not appeal from the immediately appealable . . . attorney fees orders . . . , those orders became final and binding on him"]; *Guenter v. Lomas & Nettleton Co.* (1983) 140 Cal.App.3d 460, 465 ["since appellant . . . did not appeal from the [directly appealable order denying class certification] that order is now final and binding upon appellant . . . and upon this court]; *Morrissey v. City and County of San Francisco* (1977) 75 Cal.App.3d 903, 908 ["that [directly appealable] order [denying class certification], unappealed, is now final and binding upon plaintiff . . . , and upon us].)

Two years after the trial court granted the Department's anti-SLAPP motion and struck the FEHA retaliation claim, and well after the time to appeal from that ruling had lapsed, plaintiff moved a different trial judge for leave to amend his operative pleading to state a new claim for retaliation under FEHA. According to plaintiff, newly discovered facts, that had occurred after the filing of the complaint, justified the requested amendment. The Department opposed the motion, arguing, inter alia, that once an anti-SLAPP motion has been granted, a plaintiff cannot amend his or her pleading in an attempt to circumvent the ruling on the anti-SLAPP motion. (*Simmons, supra*, 92 Cal.App.4th at p. 1073.) Notwithstanding that plaintiff and the trial court were bound by

14

the ruling striking the FEHA retaliation claim and the holding in *Simmons*, the trial court granted plaintiff leave to file an amendment to his complaint to, in effect, revive the stricken FEHA retaliation claim by allowing him to include in his newly pled FEHA claim four of the five adverse employment actions that formed the basis of the stricken claim.

Based on the authorities establishing that plaintiff was bound by the final order striking his FEHA retaliation claim and the holding in *Simmons, supra*, 92 Cal.App.4th 1068, the trial court erred by allowing plaintiff to revive his stricken FEHA retaliation claim. By doing so, the trial court impermissibly reversed a final, binding order issued by another trial court and failed to follow the binding precedent in *Simmons, supra*, 92 Cal.App.4th 1068.

In *People v. Grace* (1926) 77 Cal.App. 752, 760, the court explained that there is only one superior court and that an order issued by one department of that court is binding on other departments of that court. In *Ford v. Superior Court* (1986) 188 Cal.App.3d 737, 742, the court further explained that "[o]ne department of the superior court cannot enjoin, restrain, or otherwise interfere with the judicial act of another department of the superior court. Even between superior courts of different counties, having coequal jurisdiction over a matter, the first court of equal dignity to assume and exercise jurisdiction over a matter acquires exclusive jurisdiction. [Citations.] [¶] A judgment rendered in one department of the superior court is binding on that matter upon all other departments until such time as the judgment is overturned. [Citation.]"

Judge Palmer issued an order striking the FEHA retaliation claim and that order thereafter became final and binding on plaintiff. Two years later, Judge Meiers purported to revive the FEHA retaliation claim based on both new allegations and most of the original adverse employment actions pled in support of that claim. Under *Ford v. Superior Court, supra,* 188 Cal.App.3d 737, Judge Meiers had no authority to reverse Judge Palmer's ruling, particularly after that order became final and binding on plaintiff.

Moreover, under *Simmons, supra*, 92 Cal.App.4th 1068, the requested amendment to circumvent Judge Palmer's ruling was also unauthorized because it would defeat the

purposes underlying the anti-SLAPP statute. As the court in *Simmons* explained, "[T]he anti-SLAPP statute makes no provision for amending the complaint once the court finds the requisite connection to First Amendment speech. And, for the following reasons, we reject the notion that such a right should be implied. [¶] In enacting the anti-SLAPP statute, the Legislature set up a mechanism through which complaints that arise from the exercise of free speech rights 'can be evaluated at an early stage of the litigation process' and resolved expeditiously. (*Lafayette Morehouse*, [*Inc. v. Chronicle Publishing Co.* (1995)] 37 Cal.App.4th [855,] 865). Section 425.16 is just one of several California statutes that provide 'a procedure for exposing and dismissing certain causes of action lacking merit.' (*Lafayette Morehouse, supra*, at p. 866.) [¶] Allowing a SLAPP plaintiff leave to amend the complaint once the court finds the prima facie showing has been met would completely undermine the statute by providing the pleader a ready escape from section 425.16's quick dismissal remedy. Instead of having to show a probability of success on the merits, the SLAPP plaintiff would be able to go back to the drawing board with a second opportunity to disguise the vexatious nature of the suit through more artful pleading. This would trigger a second round of pleadings, a fresh motion to strike, and inevitably another request for leave to amend. [¶] By the time the moving party would be able to dig out of this procedural quagmire, the SLAPP plaintiff will have succeeded in his goal of delay and distraction and running up the costs of his opponent. (See *Dixon v. Superior Court* (1994) 30 Cal.App.4th 733, 741 [36 Cal.Rptr.2d 687].) Such a plaintiff would accomplish indirectly what could not be accomplished directly, i.e., depleting the defendant's energy and draining his or her resources. ([*Church of*] *Scientology* [*v. Wollersheim* (1996)] 42 Cal.App.4th [628,] 645.) This would totally frustrate the Legislature's objective of providing a quick and inexpensive method of unmasking and dismissing such suits. (*Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 823 [33 Cal.Rptr.2d 446].)" (*Simmons, supra,* 92 Cal.App.4th at pp. 1073-1074.)

In this case, as the defendant did in *Simmons, supra*, 92 Cal.App.4th 1068, the Department availed itself of the protections of the anti-SLAPP statute and obtained an expeditious determination that plaintiff's FEHA retaliation claim was based on protected

activity and that plaintiff did not have a probability of prevailing on the merits of that claim. Plaintiff did not attempt to amend that claim following the ruling striking it, and although that ruling was directly appealable, plaintiff chose not to appeal from it. Instead, two years later, plaintiff sought to revive the FEHA retaliation claim based on new allegations of adverse employment actions taken against him after the filing of the complaint, as well as most of the original alleged adverse actions. By allowing plaintiff to amend his complaint as requested, the trial court denied the Department the benefit of the anti-SLAPP statute, i.e., a "quick dismissal remedy." Because the order allowing the amendment was contrary to the policies underlying the anti-SLAPP statute, it was unauthorized and must be reversed. Because the order denying the second anti-SLAPP motion was based on the unauthorized order granting leave to amend, the order on the second anti-SLAPP motion must also be reversed.

In his letter brief, plaintiff contends that the Department waived any argument that the trial court erred in granting leave to amend because the opening and reply briefs do not contain any such argument. A fair reading of the opening brief, however, demonstrates that the Department adequately raised the issue. In the opening brief, the Department argued that "[t]he first judge assigned to this case [Judge Palmer] recognized the dangers of allowing this case to go forward. The second judge [Judge Meiers] defeated the purpose of the anti-SLAPP law by allowing the stricken claims of retaliation to be revived based on vociferous but bombastic allegations. [The Department] relies on this Court to correct a ruling that 'totally frustrate[s] the Legislature's objective of providing a quick and inexpensive method of unmasking and dismissing' unmeritorious lawsuits. (See *Simmons*[*, supra,*] 92 Cal.App.4th [at p.] 1074 [observing that allowing an amendment after the granting of an anti-SLAPP motion would "'completely undermine the statute' and concluding that the statute's omission of any provision for leave to amend was not the product of inadvertence or oversight"].) Thus, contrary to plaintiff's assertion, not only did the Department explicitly challenge the correctness of the order granting leave to amend, it supported that challenge with a citation to and a quotation from *Simmons, supra,* 92 Cal.App.4th 1068. Although plaintiff chose not to address the

17

issue in his respondent's brief, he was on notice that the Department took issue with the propriety of the trial court's order granting leave to amend in light of the holding in *Simmons*. Moreover, the Department relied on *Simmons* in opposing the motion for leave to amend and in making its anti-SLAPP motion in the trial court. We therefore conclude that there has not been a waiver of the issue on appeal.

In its letter brief, the Department expands upon its challenge to the order granting leave to amend, again relying on *Simmons, supra,* 92 Cal.App.4th 1068. In doing so, the Department notes that the order, when entered, was not an appealable order. But that order subsequently became appealable under section 906[11]—as an interim order that affects a final, directly appealable order—when the Department appealed from the subsequent order denying the second anti-SLAPP motion, which subsequent order was directly appealable under section 425.16, subdivision (i). (See *Sweeting v. Murat* (2013) 221 Cal.App.4th 507, 511, fn. 6.) We therefore have jurisdiction under section 906 to review the propriety of the trial court's order granting leave to amend.

In his motion for leave to amend in the trial court, plaintiff attempted to distinguish and limit the holding in *Simmons, supra,* 92 Cal.App.4th 1068, relying, inter alia, on the subsequent decision in *Nguyen-Lam v. Cao* (2009) 171 Cal.App.4th 858, 870-871 (*Nguyen-Lam*). According to plaintiff, that case authorizes an amendment to a claim after the granting of an anti-SLAPP motion based on "newly-discovered, newly-occurring" evidence, if that evidence would assist a plaintiff in meeting his or her burden under the second prong of the anti-SLAPP statute. Although the trial court apparently accepted this characterization of the holding in *Nguyen-Lam*, we do not read that decision as authorizing the proposed amendment.

As the court in *Hecimovich v. Encinal School Parent Teacher Organization* (2012) 203 Cal.App.4th 450 explained, the holding in *Nguyen-Lam, supra,* 171 Cal.App.4th 858

---

[11] Section 906 provides, in pertinent part: "Upon an appeal pursuant to Section 904.1 or 904.2, the reviewing court may review the verdict or decision and *any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the judgment or order appealed from or which substantially affects the rights of a party . . . .*" (Italics added.)

18

was based upon a unique procedural posture which limits its application to cases with similar facts. "[In *Nguyen-Lam*], the trial court had entered an unusual order, described by the Court of Appeal as follows: 'The trial court couched its ruling as an order granting defendant's motion to strike, but with leave for plaintiff to amend her complaint to cure any deficiency concerning actual malice. . . . But authorizing an amendment under these circumstances is tantamount to denying the strike motion, and we therefore reach the propriety of the ruling based on defendant's challenge.' (*Nguyen-Lam v. Cao, supra*, 171 Cal.App.4th at pp. 869-870.) The court went on to affirm the denial of the SLAPP motion, pointedly noting that it did so because the evidence showing that plaintiff could prevail on the merits was before the trial court at the time of the motion: 'True, a plaintiff may not avoid or frustrate a hearing on the anti-SLAPP motion by filing an amended complaint (*Sylmar Air Conditioning v. Pueblo Contracting Services, Inc.* (2004) 122 Cal.App.4th 1049 [18 Cal.Rptr.3d 882]) but where, as here, the evidence prompting amendment is found in the declarations already submitted for the hearing, there is no risk the purpose of the strike procedure will be thwarted with delay, distraction, or increased costs. (Cf. *ARP Pharmacy Services, Inc. v. Gallagher Bassett Services, Inc.* (2006) 138 Cal.App.4th 1307, 1323 [42 Cal.Rptr.3d 256] [plaintiff cannot amend pleading to avoid pending anti-SLAPP motion]; *Navellier v. Sletten* (2003) 106 Cal.App.4th 763, 772 [131 Cal.Rptr.2d 201] [plaintiff cannot use "eleventh-hour amendment" to plead around anti-SLAPP motion].)' (*Nguyen-Lam v. Cao, supra*, 171 Cal.App.4th at pp. 871-872.) In short, the court concluded, 'the trial court did not err in permitting plaintiff to amend her complaint to plead actual malice in conformity with the proof presented at the hearing on the strike motion.' (*Id.* at p. 873.)" (*Id.* at pp. 461-462.)

Here, plaintiff did not attempt immediately to amend his pleading to include facts that conformed to the proof that was already before the trial court on the first anti-SLAPP motion, as was the case in *Nguyen-Lam, supra,* 171 Cal.App.4th 858. Instead, two years after the final, binding order striking his FEHA retaliation claim, he attempted to revive his original FEHA retaliation claim by combining allegations based on facts that occurred after the filing of the original complaint with allegations from the original complaint. In

19

doing so, he was circumventing the order striking his FEHA retaliation claim by an unauthorized amendment. Therefore, the holding in *Nguyen-Lam* had no application to his motion to amend. Rather, as explained, the holding in *Simmons, supra,* 92 Cal.App.4th 1068 controlled the analysis of his motion for leave to amend and was dispositive of it.

Under *Simmons*, *supra,* 92 Cal.App.4th 1068, plaintiff could not have amended his complaint by omitting the two adverse employment actions that Judge Palmer found arose from protected activity. Nor could plaintiff have attempted to add new allegations of facts that predated the filing of the original complaint. But, had plaintiff limited his amendment to the newly discovered, after-occurring evidence, as we discuss, the trial court arguably may have had discretionary authority to allow such an amendment. Because the trial court made no such limitation, and instead allowed plaintiff to include four of the five adverse employment actions that had supported the stricken FEHA retaliation claim, the order granting leave to file the amendment contravened the policies underlying the anti-SLAPP statute.

### B.      Amendment Based Solely on Newly Discovered Evidence

Although the court in *Simmons, supra,* 92 Cal.App.4th 1068 held that a plaintiff cannot amend a claim—by deleting or adding allegations to circumvent the anti-SLAPP statute—once a special motion to strike has been granted, the *Simmons* court did not directly deal with the issue of whether a complaint can be amended to state a different claim, under a similar legal theory, based solely on newly discovered, after-occurring evidence. Based on the foregoing analysis of the holding in *Simmons* and the facts of this case, however, we do not need to determine whether allowing such an amendment two years after the original ruling on the anti-SLAPP motion would be contrary to the policies underlying the anti-SLAPP statute and therefore unauthorized.

Moreover, even assuming that the trial court had allowed plaintiff to file an amendment asserting a FEHA retaliation claim limited to the three newly discovered alleged adverse employment actions, the trial court's subsequent order denying the anti-

20

SLAPP motion to that claim would have been erroneous because, as we discuss, any such claim would have been subject to the Department's second special motion to strike the FEHA retaliation claim in the amended pleading.

### 1. *Legal Principles and Standard of Review*

#### a. Anti-SLAPP Statute and Standard of Review

We recently summarized the legal principles and standard of review that govern our analysis of a trial court's order ruling on an anti-SLAPP motion. "Section 425.16 provides that a cause of action arising from a defendant's conduct in furtherance of constitutionally protected rights of free speech or petitioning may be stricken unless the plaintiff has a probability of prevailing on the merits. (§ 425.16, subd. (b)(1).) In ruling on a special motion to strike under section 425.16, the trial court employs a two-prong analysis. Initially, the trial court determines '"whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. . . . If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." [Citation.]' (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 733.)" (*Kenne v. Stennis* (2014) 230 Cal.App.4th 953, 962 (*Stennis*).)

"To satisfy the second prong—the probability of prevailing—the plaintiff must demonstrate that the complaint is legally sufficient and supported by a prima facie showing of facts to support a favorable judgment if the evidence submitted by the plaintiff is accepted. The trial court considers the pleadings and evidentiary submissions of both the plaintiff and the defendant. Although '"the court does not *weigh* the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim. [Citation.]" (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821 [123 Cal.Rptr.2d 19, 50 P.3d 733], superseded by statute on other grounds as noted in *Hutton v. Hafif* (2007) 150

21

Cal.App.4th 527, 547 [59 Cal.Rptr.3d 109].)' (*Cole v. Patricia A. Meyer & Associates, APC* (2012) 206 Cal.App.4th 1095, 1104-1105 (*Cole*).) The standard for determining the merits of a defendant's special motion to strike a complaint is similar to that for determining the merits of a defendant's motion for summary judgment. 'Both seek to determine whether a prima facie case has been presented by [the] plaintiff in opposing the motions.' (*Bergman v. Drum* (2005) 129 Cal.App.4th 11, 18; see Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2014) ¶ 7:1008, p. 7(II)-57 ['The "probability of prevailing" is tested by the same standard governing a motion for summary judgment, nonsuit, or directed verdict'].) If a plaintiff sets forth a prima facie case in opposition to such motions, the motions must be denied." (*Stennis, supra,* 230 Cal.App.4th at pp. 962-963.)

"'We review an order granting an anti-SLAPP motion de novo, applying the same two-step procedure as the trial court. (*Alpha & Omega Development, LP v. Whillock Contracting, Inc.* (2011) 200 Cal.App.4th 656, 663 [132 Cal.Rptr.3d 781].) We look at the pleadings and declarations, accepting as true the evidence that favors the plaintiff and evaluating the defendant's evidence '"only to determine if it has defeated that submitted by the plaintiff as a matter of law.' [Citation.]" (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3 [46 Cal.Rptr.3d 638, 139 P.3d 30] (*Soukup*).) The plaintiff's cause of action needs to have only "'minimal merit' [citation]" to survive an anti-SLAPP motion. (*Id.* at p. 291.)' (*Cole, supra*, 206 Cal.App.4th at p. 1105.)" (*Stennis, supra,* 230 Cal.App.4th at pp. 962-963.)

### b. Civil Code Section 47, Subdivision (b)—Litigation Privilege

Because, under the second prong of the anti-SLAPP analysis, we are required to determine the legal sufficiency of plaintiff's FEHA retaliation claim based on newly discovered evidence, the appeal raises the issue of whether that claim is barred on the merits as a matter of law under the litigation privilege set forth in Civil Code section 47, subdivision (b). As we explained in *Stennis, supra*, 230 Cal.App.4th 953, that "section provides, in pertinent part: 'A privileged publication or broadcast is one made: [¶] . . .

22

[¶] (b) In any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable pursuant to Chapter 2 (commencing with Section 1084) of Title 1 of Part 3 of the Code of Civil Procedure . . . .' 'The privilege in [Civil Code] section 47[, subdivision (b)] is "relevant to the second step in the anti-SLAPP analysis[12] in that it may present a substantive defense plaintiff must overcome to demonstrate a probability of prevailing. (See, e.g., *Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 926-927 [120 Cal.Rptr.2d 576] [where the plaintiff's defamation action was barred by Civil Code section 47, subdivision (b), the plaintiff cannot demonstrate a probability of prevailing under the anti-SLAPP statute]; *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman* (1996) 47 Cal.App.4th 777, 783-785 [54 Cal.Rptr.2d 830] [the defendant's prelitigation communication privileged and trial court therefore did not err in granting motion to strike under the anti-SLAPP statute].)" (*Flatley* [*v. Mauro*], *supra*, 39 Cal.4th at p. 323.)' (*Rohde v. Wolf*, *supra*, 154 Cal.App.4th at p. 38.)" (*Stennis, supra,* 230 Cal.App.4th at p. 964.)

"The Supreme Court has stated, 'The litigation privilege, codified at Civil Code section 47, subdivision (b), provides that a "publication or broadcast" made as part of a "judicial proceeding" is privileged. This privilege is absolute in nature, applying "to *all* publications, irrespective of their maliciousness." (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 216 [266 Cal.Rptr. 638, 786 P.2d 365] (*Silberg*).) "The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action." (*Id*. at p. 212.) The privilege "is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards." (*Rusheen*

---

**12**    "'Notwithstanding [the] relationship between the litigation privilege and the anti-SLAPP statute . . . the two statutes are not substantively the same.'" (*Rohde v. Wolf* (2007) 154 Cal.App.4th 28, 38, fn. 2, quoting *Flatley v. Mauro* (2006) 39 Cal.4th 299, 323; see *Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1263.)

*v. Cohen* (2006) 37 Cal.4th 1048, 1057 [39 Cal.Rptr.3d 516, 128 P.3d 713] (*Rusheen*).)'
(*Action Apartment Association, Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232,
1241.)" (*Stennis, supra,* 230 Cal.App.4th at p. 964.)

"The Supreme Court has also observed that '"[t]he principal purpose of [Civil
Code] section [ 47, subdivision (b)] is to afford litigants and witnesses [citation] the
utmost freedom of access to the courts without fear of being harassed subsequently by
derivative tort actions." (*Silberg*[, *supra,*] 50 Cal.3d [at p.] 213.) Additionally, the
privilege promotes effective judicial proceedings by encouraging "'open channels of
communication and the presentation of evidence'" without the external threat of liability
(*ibid.*), and "by encouraging attorneys to zealously protect their clients' interests." (*Id.* at
p. 214.) "Finally, in immunizing participants from liability for torts arising from
communications made during judicial proceedings, the law places upon litigants the
burden of exposing during trial the bias of witnesses and the falsity of evidence, thereby
enhancing the finality of judgments and avoiding an unending roundelay of litigation, an
evil far worse than an occasional unfair result." (*Ibid.*)' (*Flatley v. Mauro, supra,* 39
Cal.4th at pp. 321-322.)" (*Stennis, supra,* 230 Cal.App.4th at pp. 964-965.)

"'[T]he privilege is "an 'absolute' privilege, and it *bars all tort causes of action
except a claim of malicious prosecution.*" (*Hagberg v. California Federal Bank* (2004)
32 Cal.4th 350, 360 [7 Cal.Rptr.3d 803, 81 P.3d 244], italics added.) The litigation
privilege has been applied in "numerous" cases involving "fraudulent communications or
perjured testimony." [Citations.]' (*Flatley v. Mauro, supra,* 39 Cal.4th at p. 322, italics
added.) Because Civil Code section 47, subdivision (b) protects any statements or
writings that have '"some relation"' to a lawsuit, communications made both during and
in anticipation of litigation are covered by the statute. (*Rubin v. Green* (1993) 4 Cal.4th
1187, 1193-1194; see *Neville v. Chudacoff, supra,* 160 Cal.App.4th at p. 1268.)"
(*Stennis, supra,* 230 Cal.App.4th at p. 965.)

## 2. Analysis

### a. Protected Activity[13]

#### (i) Dissemination of confidential personnel records

As set forth in detail above, plaintiff alleged in the amendment that the Department sent copies of the closure letter, which included the sustained finding that he had filed a false claim, and the investigation file detailing multiple allegations of plaintiff's additional misconduct, to several management level Department employees. Plaintiff based that allegation on the deposition testimony of Associate Warden Tom Arlitz who testified that he received a large packet of documents from the Department that included information about the sustained finding that plaintiff had filed a false claim and other allegations of misconduct by plaintiff during the period plaintiff was separated from state service.

In support of its second anti-SLAPP motion, the Department submitted declaration testimony establishing that after the complaint in this action was filed, staff counsel for the Department forwarded the complaint and related documents to "various [Department] officials," including Associate Warden Arlitz. According to that testimony, the Department managers involved in reviewing the investigation report and issuing the closure letter to plaintiff did not distribute or direct any other Department employee to distribute the closure letter or report to any other person. Plaintiff did not submit any evidence that contradicts the Department's evidence on this issue. The deposition testimony of Associate Warden Arlitz was ambiguous, at best, and when read in light of the Department's declaration testimony, it supported a reasonable inference that the

---

[13] Although the amendment asserted three new alleged adverse employment actions that the Department contends arose from protected activity, plaintiff did not address the third such action—solicitation of adverse information for use in further retaliation—in the argument section of his opening brief. Plaintiff presumably concedes that this allegation arose from protected activity or is otherwise not actionable under FEHA.

25

package of documents to which Associate Warden Arlitz referred in his deposition was plaintiff's complaint and related documents not the investigative report and closure letter.

Based on the evidence in the record—including the declarations of various Department employees that demonstrated that Associate Warden Arlitz and others in management were sent copies of plaintiff's complaint by staff counsel and that his investigation file and closure letter were not disseminated—the disclosure of information about which plaintiff complains was in response to the filing of the complaint in this action. As such, that disclosure was privileged under Civil Code section 47 as communications made in connection with a pending litigation. That disclosure therefore arose from protected activity, i.e., the Department's right to petition. As a result, the Department met its burden under the first prong of the anti-SLAPP statute of showing that the alleged dissemination of confidential personnel records fell under the protection of that statute.

(ii) Refusal to pay interest on back pay

Plaintiff alleged in the amendment that the Department, after the filing of the complaint, continued to refuse to pay interest on back pay from December 2005 through June 2006. According to plaintiff, the interest was due pursuant to the Board's reinstatement order. Plaintiff further alleged that the Department's refusal to pay the claimed interest was based on the advice of counsel "to suspend payment of interest pending the outcome of a motion . . . in a pending case. . . ."

The evidence on this issue showed that when plaintiff complained about the nonpayment of interest, he was advised by the Department in August 2012 that the interest was not being paid because there was a pending motion on the interest dispute before the trial court in the first action. The conduct complained of was therefore an issue under consideration by a judicial body. Accordingly, the Department satisfied its burden under the first prong of the anti-SLAPP statute of showing that the failure to pay interest arose from protected activity.

26

b.    Probability of Prevailing

Based on the foregoing analysis, it is clear that plaintiff could not show that there was probability of prevailing on the merits of either the dissemination of confidential information claim or the refusal to pay interest claim. As discussed, the Department's evidence in support of its anti-SLAPP motion demonstrated that the conduct complained of as to both claims involved communications in response to or during a pending litigation and was therefore absolutely privileged under Civil Code section 47.

In *Gallanis-Politis v. Medina* (2007) 152 Cal.App.4th 600, the court explained the type of conduct to which the Civil Code section 47 privilege applies. "The litigation privilege protects only publications and communications; it does not protect noncommunicative conduct. The threshold issue in determining the applicability of the privilege 'is whether the defendant's conduct was communicative or noncommunicative.' (*Rusheen* [*v. Cohen*], *supra*, 37 Cal.4th at p. 1058.) [¶] The distinction between communicative and noncommunicative conduct 'hinges on the gravamen of the action.' (*Rusheen* [*v. Cohen*], *supra*, 37 Cal.4th at p. 1058.) '[T]he key in determining whether the privilege applies is whether the injury allegedly resulted from an act that was communicative in its essential nature.' (Fn. omitted.) (*Ibid.*) The privilege 'extends to noncommunicative acts that are necessarily related to the communicative conduct.' (*Id.* at p. 1065.) In short, 'unless it is demonstrated that an independent, noncommunicative, wrongful act was the gravamen of the action, the litigation privilege applies.' (*Ibid.*)" (*Id.* at p. 616.)

Here, both of the newly alleged adverse actions were based on acts necessarily related to communicative conduct—i.e., sending plaintiff's complaint to certain management personnel to advise them of the pendency of the action and following the advice of the Attorney General not to pay disputed interest pending the outcome of a motion in a related action. Those communications and related acts were therefore absolutely privileged. Accordingly, even assuming that the trial court's order granting leave to amend had been limited to the two new alleged adverse actions, plaintiff would have nevertheless failed to satisfy his burden under the second prong of the anti-SLAPP

27

as to those newly alleged adverse employment actions because the Department's evidence constituted a prima facie showing that the conduct complained of was privileged and plaintiff's evidence was insufficient to overcome that showing.

In his supplemental letter brief, plaintiff contends that the two alleged adverse actions were noncommunicative. According to plaintiff, the gravamen of his newly alleged retaliation claim was based on "the denial of [plaintiff's] POBRA rights to challenge the finding of dishonesty and the subsequent widespread dissemination of that finding based on the denial of [plaintiff's] POBRA rights, and the denial of interest on backpay to which [plaintiff] had a statutory right."

In his letter brief, plaintiff attempts to merge his *prior* allegations concerning the violation of his POBRA rights[14] with the two *new* adverse employment actions that occurred after the granting of the Department's first anti-SLAPP motion. The POBRA allegations, however, were not based on new facts, but rather were a repetition of allegations from plaintiff's original and prior amended pleadings. Moreover, in ruling on the first anti-SLAPP motion, Judge Palmer expressly stated that the Department's alleged actions of "'instituting a new and frivolous misconduct investigation including subjecting plaintiff to an eight-hour administrative interrogation' and 'unlawfully and maliciously notifying plaintiff that the misconduct investigation resulted in a sustained finding of dishonesty against him without any "*Skelly*" [i.e., POBRA] rights' . . . describe[d] protected activity of the defendants. The investigation of misconduct by [the Department's] employees and communicating the findings of that investigation are free speech rights of the [Department] and involve public issues." Therefore, because the allegations concerning the violations of plaintiff's POBRA rights were not based on new

---

**14** In a footnote in his letter brief, plaintiff notes that our letter requesting briefing on the Civil Code section 47 issue omitted any reference to the allegations in the amendment to the third amended complaint concerning the violation of his POBRA rights. As explained above, the omission was purposeful because those allegations were not based on new facts that occurred after the filing of the original pleading. Thus, those prior allegations could not be asserted as a basis for a renewed retaliation claim that had previously been stricken by Judge Palmer. (See *Simmons, supra,* 92 Cal.App.4th 1068.)

28

facts and were necessarily related to plaintiff's prior allegations concerning the misconduct investigation and the issuance of the closure letter, they could not be reasserted in the newly alleged retaliation claim based on the reasons and authorities discussed above, including the holding in *Simmons, supra,* 92 Cal.App.4th 1068.

As to the two newly alleged adverse employment actions, we reject plaintiff's assertions that they were based solely on noncommunicative conduct. As noted, the gravamen of those alleged adverse actions was based on the sending of plaintiff's complaint to certain management personnel to advise them of the pendency of the action and the following of the advice of counsel by refusing to pay the disputed interest on back pay. Each of those actions was communicative and directly related to pending litigation. As a result, the alleged conduct relating to those actions was privileged. (See *Rusheen v. Cohen, supra,* 37 Cal.4th at p. 1065; *Gallanis-Politis v. Medina, supra,* 152 Cal.App.4th at p. 616.)

## DISPOSITION

The orders granting leave to file an amendment to the third amended complaint and denying the second anti-SLAPP motion are reversed. The Department is awarded costs on appeal. On remand, the trial court shall determine the Department's entitlement to attorney fees under section 425.16, subdivision (c)(1).

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

MOSK, J.

We concur:

TURNER, P. J.

BAKER, J.